NEW YORK,
May, 1824.

*Ex parte* DEAN.

Ex parte
Dean.

DEAN sued Armitage in a Justice's Court in Washington county, recovered judgment, and Armitage appealed to the Court of Common Pleas. The judgment before the Justice was rendered on the 12th September last, and though the notice of appeal was given the same day, the bond to prosecute the appeal was not executed till the 16th of the same month. On the coming in of the Justice's return, at the last March term of that Court, Dean moved to quash the appeal, on the ground that the bond was not given in time. It was insisted that the computation of the time allowed for appealing by the statute, (sess. 41, ch. 94, s. 17, Laws, vol. 4, 82, c.) must be computed inclusive of the day of giving the judgment; but the Common Pleas being equally divided on this question, the motion was denied.

*Where the computation of time in a statute is to be done, the first day should be excluded.*

*E. g. under the statute, (sess. 41, ch. 94, s. 17,) prescribing the time within which an appeal should be brought from a justice's court*

This Court were now moved for a mandamus, to compel the Common Pleas of Washington to quash the appeal, upon the ground taken in the Court below; and it was insisted here, that when the computation of time is to be made from an act done, the day on which the act is done is to be included in the reckoning; that this is fully supported by the decisions in the English Courts in analogous cases; (*Rex* v. *Aderly*, Doug. 463; *Castle* v. *Burdett*, 3 T. R. 623; *Glassington et al.* v. *Rawlins et al.*, 3 East, 407;) that the day on which the judgment was rendered is, in this case, the day on which the act is done, and is to be included; consequently, the appeal to have been within the 4 days, should have been on the 15th. The practice of reckoning one day inclusive and the other exclusive obtains only in the construction of rules of Court, and is the same here as in England. The construction, in such case, is determined by rule of Court, and has no influence in giving an interpretation to a statute. But,

*Per Curiam.* We have departed from the rule of construction adopted by the English Courts, and hold that the same mode of computation is to be adopted upon statutes

NEW YORK, which prevails both in England and in this state as to noti-
May, 1824.   ces; that is to say, one day is to be counted inclusive and
────────    the other exclusive.   We held this at the last term upon the
Ex parte    statute, (sess. 43, ch. 184, s. 3,) in relation to the sale and
Dean.       redemption of lands upon execution, which gives to the judg-
ment creditor fifteen months from the sale within which he
may redeem.   Where the sale was on the 15th of August,
1822, we gave the creditor the whole of the 15th November,
1823, to redeem.

But without resorting to this rule of construction, we,
think the particular words of the statute under considera-.
tion show an intention in the legislature to exclude the first
day.   These are, that the party appealing shall at the time
of rendering such judgment, or within four days thereafter,
(that is, after the time of rendering judgment, which is,
legally, the day of rendering it, and thus the day is excluded,),
serve the Justice personally with a notice in writing, &c.
(Sess. 41, ch. 84, s. 17.)   To exclude the first day would,
moreover, we believe, accord with the uniform practice
under this statute.

Motion denied.(a)

(a) It is somewhat surprising, that in England, after a lapse of centuries,
during which this question upon the computation of time from *an act done*,
has been so often passed upon, it should be considered still open, and indeed
of a nature so much at large as to be incapable of submission to a general
rule.   Yet such is the result, according to the Master of the Rolls, of the
last and almost the only English case in which the authorities upon this
head are fully reviewed; though I think it is not difficult to perceive, from
this case, that if the English Courts ever reach a general rule, it will accord
with that adopted by the Supreme Court, in the matter of *Snyder* v. *War-
ren*, Sheriff of Rensselaer, (Ante, 518,) and the present case, *Ex parte
Dean.*   The English case to which I allude is *Lester* v. *Garland*, (15 Ves.
248,) determined by Sir William Grant, Master of the Rolls.   That case
was as follows:

Bequest of       SIR JOHN LESTER, by his will, dated the 25th of December, 1804, after
residue,   in   several dispositions, gave and bequeathed all the residue of his personal
trust, in case
A. shall, with-  estate to trustees, upon trust, that in case his sister, Sarah I cinter, shall not
in six months   intermarry with A. before all or any of the shares hereinafter given to her
after the testa- children shall become payable, and in case his sister shall, within six cal-
tor's decease,
give security   endar months after his decease, give such security as his trustees or the
not to marry   survivor, &c. shall approve of, that she will not at any time intermarry

with A. or, in case she shall so intermarry with him after the periods when all or any of the shares hereinafter bequeathed to her children shall become payable and shall be paid to him, her, or them, that she will, within six calendar months after such marriage, pay the amount of such share or shares, or cause any child or children who shall have received his, her, or their share or shares, to refund the same to the trustees, then, and not otherwise, the trustees were directed to pay such residuary estate to the eight children of Sarah Pointer, at the age of twenty-one, or marriage, with benefit of survivorship; with a proviso, that in case his said sister shall intermarry with A. before all or any of the shares of her said children shall become payable, as aforesaid, or shall refuse or neglect to give such security as aforesaid, then, and in either of the said cases, he directed the sum of 1000*l.* 'a piece only, with interest from his death or failure of his issue, as aforesaid, to be paid to the children of his sister; and, subject thereto, gave his residuary estate to the children of his other sister, Amey Garland.

The testator died upon the 12th of January, 1805, between the hours of .eight and nine in the evening. On the 12th of June, the trustees gave to Mrs. Pointer notice, to give the security required by the will, on or before the 12th of July. Mrs. Pointer, on the 19th of June, gave a written notice to the trustees, that she would give no security; but on the 9th of July she gave another notice in writing, desiring to know the nature and extent of the security required, declaring that she was then willing to give them her bond, which was the only security she had to offer. In consequence of that communication, on the 11th of July, the solicitor for the trustees called upon her for the purpose of agreeing on the terms of the bond, when she requested further time; but afterwards, by a written notice, dated on that day, she refused to execute. On the next day, however, the 12th of July, upon the remonstrances of the solicitor for the trustees, she did execute the bond about seven o'clock in the evening. On the same evening, two of the trustees declared their approbation of the security, but the approbation of the third, being at Bristol, could not be obtained until some time afterwards; Mrs. Pointer having executed the bond at her residence in the neighborhood of Poole.

The bill was filed by the infant children of Amey Garland, claiming under the forfeiture, upon the ground, first, that after the notices given by Mrs. Pointer, upon the 19th of June and the 11th of July, she could not retract; secondly, that the security was not executed within the time.

Mr. *Richards*, Mr. *Alexander*, and Mr. *Daniell*, for the plaintiffs. There is no doubt, that this is a condition precedent. First, Mrs. Pointer was concluded by the express refusal to give the security required; if, as the defendants insist, she should retract that refusal. Secondly, the security she has given by the bond, dated the 12th of July, was not given within the time; the period of six months expiring with the 11th; the day on which the testator died being included in the computation, according to the case of *Castle* v. *Burditt*, (3 T. R. 623,) and many other authorities; the whole day, in these cases, being either inclusive or exclusive, without regard to the hour at which the act is done, or the event happens. The old cases

NEW YORK, May, 1824.

Ex parte Dean.

*Marginal summary:* B. then, and not otherwise, to pay to the children of A. with a proviso to go over, if she shall refuse or neglect to give such security. A condition precedent. The 6 months are exclusive of the day of the testator's death; therefore, as he died on the 12th of January, between eight and nine in the evening, a security given on the 12th of July, about nine in the evening, was held sufficient. No general rule in computing time from an act or an event, that the day is to be inclusive or exclusive; depending on the reason of the thing, according to the circumstances.

NEW YORK,
May, 1824.

Ex parte
Dean.

upon this point, collected in Viner, (20. Vin. Ab. tit, Time,) are contradictory; but the late decisions, *The King* v. *Adderley*, (Doug. 463, ed. 2,) down to *Castle* v. *Burditt*, following *Clayton's case*, (5 Rep. 1,) *Bellasis* v. *Hester*, (1 Ld. Raym, 280,) and older cases, are uniform, that where the computation is to be from an act done, the day is inclusive. In the case of *Pugh* v. *The Duke of Leeds*, (Cowp. 714,) it was considered a question of intention; and this is a mere question of construction upon this will, under which both parties claim as volunteers.

Mr. *Thompson* and Mr. *Roupell*, for the defendants, the children of Mrs Pointer.—Sir *Samuel Romilly*, Serjeant *Palmer* and Mr. *Newbolt*, for the trustees. Admitting that this is a condition precedent, the plaintiffs must establish that the day of the testator's death is necessarily included in the computation. No alteration has taken place in the law upon this subject. It is true, for some purposes, the day may be taken to be either inclusive or exclusive, of which there are instances both ancient and modern; as, to prevent the penal consequences in an action against the Hundred, in which a robbery has been committed, the day is taken inclusive, according to the strictest construction; (*Norris* v. *The Hundred of Gautris*, Hob. 139; 1 Brownl. 156; 2 Roll, Abr. 520, p. 8;) and upon the same principle, from the penal consequence, the party prevailed in *The King* v. *Adderley*, (Doug. 463, ed. 2.) But in all cases, at which the Court looks with favor, the opposite construction is made, with the view to give validity to the transaction, as in the case of enrolment under acts of parliament, the day is always exclusive, as more favorable to the party, by giving validity to the transaction. A similar distinction is taken by Mr. Powell, (Powell on Mortgages, 532,) as the result of the authorities, that where the act is to confer an interest, or to give an enlarged or more beneficial enjoyment, the day is to be taken either inclusive or exclusive; and, upon the same principle, in *Pugh* v. *The Duke of Leeds*, the Court of King's Bench held, that to effectuate the intention, or to promote and uphold the spirit and meaning of an act of parliament, the words " from the date," or " from the day," should be construed either inclusive or exclusive, which was followed in *Ex parte Fallon*, (5 T. R. 283,) where Lord Kenyon puts the case of an instrument to be enrolled within one day after execution, which could not be taken to mean the fragment of the day of execution. The case in Dyer, (Dy. 218,) is, though strong, conformable to what is stated in the Second Institute. (2 Inst. 674.) The period of six months, in the case of lapse to the Ordinary, is exclusive of the day of avoidance, (2 Bl. Com. 276,) and upon the statute of Edward 1, (stat. 7 Edw. 1,) as to alienation in mortmain, the year is exclusive of the day. In all the cases, where the computation has been from an act done, including the day, the act has been one to which the party against whom the time was to run was privy; an act either by him or to him; and, in the case in Hobart, stress was laid upon the circumstance, that he might immediately bring his action. It is now settled, (Bayley on Bills of Exchange, &c. 37,) that the day on which a bill of exchange is presented, is exclusive, though the contrary.

opinion formerly prevailed; and in pleading Oyer the two days are exclusive of the day on which it is demanded. (*Page* v. *Divine,* 2 T. R. 40.)

This is in the nature of a forfeiture, and a forfeiture of the most odious description. The testator had two objects; to give the residue of his personal estate to the children of Mrs. Pointer, and to prevent her marriage with a particular person, and the penalty imposed upon her to secure the latter object is the loss of her children's fortune. The intention cannot be considered indifferent between these parties. These children were clearly the first object; and it cannot be supposed, that he would have given up that object, because the security was taken upon the 12th of July, instead of the 11th; or that he contemplated this subtle distinction, which is inconsistent with the vulgar acceptation of the words. The general principle being against the fraction of a day, the computation most material and most likely to fall in with the general transactions of mankind, is to begin from the last moment of the day rather than from the first. If the direction had been to do an act within one day after the testator's death, could the day on which he died be possibly considered as that day on which the act must be done? If this testator had died at the hour of eleven at night, could the remaining hour be accounted a day, consistently with the declared intention to allow the full period of six calendar months?

Mr. *Richards,* in reply. In the case of enrolment, the interest passes by the execution of the instrument; and then every possible construction is made to prevent divesting the right vested in a purchaser. In the case of the bill of exchange, the exception of that instrument depends upon the law of merchants. This is a mere question of intention: both parties entitled equally to favor. The fraction of a day is never allowed in the computation of time; and as, under these words, the remainder of the day of his decease cannot be excluded, there is no other course than to include the whole of that day.

The *Master of the Rolls.* The question in this cause is, whether Mrs. Pointer, within six calendar months after the decease of her brother, gave the security required by his will, as the condition upon which her children should take the benefit of his residuary estate. He died upon the 12th of January, 1805, at a quarter before nine o'clock in the evening. The security required was executed upon the 12th of July following, about seven in the evening. Computing the time *de momento in momentum,* six calendar months had not elapsed; but it is admitted, that this is not the way in which the computation is legally to be made. The question is, whether the day of Sir John Lester's death is to be included in the six months, or to be excluded. If the day is included, she did not; if it is excluded she did, give the required security before the end of the last day of the six months; and, therefore, did sufficiently comply with the condition.

It is said for the plaintiffs, that upon this subject a general rule has been by decision established, that where the time is to run from the doing of an act, (and, for the purpose of this question, it must extend to the happening of an event,) the day is always to be included. Whatever *dicta*

NEW YORK, there may be to that effect, it is clear the actual decisions cannot be brought
May, 1824. under any such general rule. The presentment of a bill of exchange to
                the sight of the drawee, is an act done; and yet it is now settled, that the
Ex parte day upon which it is presented is to be excluded; though it had been ruled
Dean. otherwise by three Judges of the Court of Common Pleas, against the
opinion of Treby, Ch. Justice. But the law is now clearly settled against
In the time that decision. The annuity act, (stat. 17, Geo. 3, c. 26,) provides, that the
from the pre- twenty days shall run from the execution of the deed. The execution of
sentment of a the deed is undoubtedly an act done; yet, according to the decisions, the
bill of ex-
change, the day upon which the deed was executed is excluded. So, in a case in the
day of present- House of Lords, in 1796, in which I was counsel, *Mercer v. Ogilvie*, where
ment exclu- the question was, whether, within the meaning of the act of parliament in
sive. Scotland, (1696, c. 4,) "for regulating deeds done on death-bed," a man had
Other in- lived sixty days after *the making and granting of the deed*, it was held that
stances, where the day on which the deed was *made and granted* was to be excluded.
the day of an
act done, or an     In the cases of alienation in mortmain, the alienation is an act done; and
event happen- yet, according to a case in Brooke, the day is excluded in the computation
ing, is some- of the year, which the immediate lord has to enter for the forfeiture. Mr.
times inclu- Justice Blackstone lays down, that the day of the avoidance of a living,
sive, some-
times exclu- which must be by an act done, or an event happening, is excluded in the
sive. computation of the six months which the patron has to present. I do not,
however, find that position in the Second Institute, to which the learned
Judge, in his Commentaries, refers.

The cases chiefly relied on upon the other side, are, *The King v. Adder-
ley*, (Doug. 463, ed. 2,) where the day on which the Sheriff's office expired
was held to be included in the six months, after which he is not to be called
on to return process. The Court of King's Bench first thought the day ex-
cluded, but chiefly upon the ground that the act, (stat. 20, Geo. 2, c. 37, s.
2,) was made for the ease of Sheriffs, and ought to be construed favorably
for them, afterwards determined that it was to be included: the case of
*Castle v. Burditt*, (3 T. R. 623,) where the day on which the notice was
given was included in the month that was to elapse before the action could
be brought: the case of *Glassington v. Rawlins*, (3 East, 407,) where, con-
trary to the first opinion of Mr. Justice Lawrence, it was determined, that
in the computation of two months, creating an act of bankruptcy, the day
of the arrest is to be included: lastly, the cases upon the statute of *hue* and
*cry*, in which the day of the robbery is included in the year in which the
party robbed has to bring his action against the Hundred, to which might
have been added the case of continual claim. To prevent a descent from
barring an entry, the claim must be renewed within a year and a day
Lord Coke says, the year and day shall be so accounted, as the day whereon
the claim was made shall be accounted one. (Co. Litt. 255, a.)

Upon these cases, Mr. Serjeant Palmer made an observation that applies
correctly to all of them, except the first; viz. that the act done, from which
the computation is made inclusive of the day, is an act to which the party
against whom the time runs is privy; and, as he has unquestionably the
benefit of some portion of the day, there is the less hardship in construc-
tively reckoning the whole of it as a part of the time allowed him; where-

as, in this case, the event was one totally foreign to the party, whose time for deliberation was to begin to run from that event. Mrs. Pointer could not reasonably be supposed to have any opportunity of beginning, on the day of Sir John Lester's death, the deliberation which was to govern the election ultimately to be made. In the case of a notice of an action to be brought, the party necessarily knows the time at which he is served with the notice, and may immediately begin to consider of the propriety of preventing the action by tendering amends. So a person arrested may immediately set about endeavoring to procure bail; and the same observation applies to the cases of the man robbed, and of continual claim. But one is not necessarily conusant of the death, still less of the contents of the will of another. Here, though it is impossible, consistently with the words of the will, to postpone the commencement of the time until the period of actual notice, yet it is not reasonable to include a day, useless to Mrs. Pointer for the purpose of deliberation, unless there is some clear, imperative rule, making it absolutely necessary. She had a very important choice to make: one way debarring herself of her natural right of marrying whom she pleased; the other, excluding her children from a considerable fortune. That is not a case for narrowing the time allowed for the decision.

It is not necessary to lay down any general rule upon this subject; but, upon technical reasoning, I rather think it would be more easy to maintain, that the day of an act done, or an event happening, ought in all cases to be excluded, than that it should in all cases be included. Our law rejects fractions of a day more generally (see the note (h) 14 Ves. 554, where it is admitted in bankruptcy) than the civil law does. The effect is to render the day a sort of indivisible point, so that any act done in the compass of it is no more referrable to any one than to any other portion of it; but the act and day are co-extensive; and, therefore, the act cannot properly be said to be passed, until the day is passed. This reasoning was adopted by Lord Rosslyn and Lord Thurlow, in the case before mentioned of *Mercer* v. *Ogilvie*. The ground on which the judgment of the Court of Session was affirmed by the House of Lords, is correctly stated in the fourth volume of the Dictionary of the Decisions of the Court of Session. In the present case, the technical rule forbids us to consider the hour of the testator's death as the time of his death; for that would be making a fraction of a day. The day of the death must, therefore, be the time of the death, and that time must be passed before the six months can begin to run. The rule contended for on behalf of the plaintiffs, has the effect of throwing back the event into a day upon which it did not happen, considering the testator as dead upon the 11th instead of the 12th of January; for it is said, the whole of the 12th is to be computed as one of the days subsequent to his death. There seems to be no alternative, but either to take the actual instant or the entire day as the time of his death, and not to begin the computation from the preceding day.

But it is not necessary to lay down any general rule. Whichever way it should be laid down, cases would occur, the reason of which would require exceptions to be made. Here, the reason of the thing requires the

NEW YORK,
May, 1824.

Ex parte
Dean.

*Our law rejects fractions of a day more generally than the civil law does.*

exclusion of the day from the period of six months given to Mrs. Pointer to deliberate upon the choice she would make ; and, upon the whole, my opinion is, that she has entered into the security before the expiration of the six months ; in sufficient time, therefore, to fulfil the condition on which her children were to take.

SIMS *v.* HAMPTON, 1 Serg. & Rawle's Penn. Rep. 411.] This case is in point, with the Supreme Court, upon *the question of appeal*, but the Chief Justice of Pennsylvania leaves the general question as much afloat. as it remains in *Lester v. Garland.*

" TILGHMAN, C. J. This action was arbitrated under the " Act regulating arbitrations," passed 20th March, 1810. The award was brought to the prothonotary, Mr. Barnes, at his house, out of office hours, in the evening of the 1st August, and filed by him, and entered on the docket on the next day ; so that the entry of the award was on the 2d August. There was no blame in the prothonotary, because being obliged by law to keep his papers, not in his dwelling house, but in a public building appropriated to the purpose, he cannot be prepared at all hours to make entries in his docket. On the 22d August, the defendant entered his appeal. The law allows *twenty days after the entry of the award on the docket*, for an appeal. The question then, is, whether this appeal was made in time. If the day on which the award was entered on the docket, is counted as one, the twenty days expired before the appeal ; if not, they had not expired. In order to ascertain with certainty, whether any given number of days have expired from an *act done*, it would be necessary to count *immediately from the act*, and the twenty-four hours next succeeding, would make the first day. But this minuteness of inquiry would be attended with so much difficulty, that it has been thought best to establish a general rule that there shall be no fraction of a day, except in case of necessity. If there shall be no fraction of a day, you must either include in your computation the whole day on which the act was done, or entirely exclude it, and begin your count on the next day ; and so far as truth is concerned, it is immaterial which of those ways you take. The chance of hitting the truth is as good in one way, as the other, but in neither will you probably arrive at the exact truth. It is no wonder then, if the rule of computation has been laid down differently, according to circumstances. The adjudged cases are not to be reconciled ; but upon a careful investigation of them, it may be perceived, that the day on which the act is done, has been included or excluded, as the nature of the case indicated to the Court, the propriety of a rigorous or a liberal construction. There can be no doubt, but a liberal construction is proper in this case. A man may be compelled to an arbitration, much against his will. The proceedings before arbitrators are not according to the course of the common law, and therefore, when an appeal is made for the purpose of obtaining a trial by jury, every indulgence and facility, consistent with the act of assembly, should be afforded. If the authorities were all on one side, I should not be for disturbing them, however unreasonable they might appear to me, because no inconvenience is greater than uncertainty of law But I have said before, that the decisions have been contradictory, and I

will mention one in favor of the construction to which I incline, which bears a strong analogy to the case before us. By the stat. 5 Geo. II. ch. 27, the defendant on being served with process, "must enter his appearance *at the return of the process*, or *within eight days after such return."* The construction of this statute is settled, that the defendant has eight days, exclusive of the day of return. (1 Cromp. Prac. 46. 1 Sellon, 102.) Now these words are exactly similar to those of our act of assembly. The act says, that the appeal shall be made *within twenty days after the entry of the award on the docket.* The statute declares that the appearance shall be entered *within eight days after the return of the process.* The entry of the award *is an act to be done*, and so is the *return of process.* There are many decisions on the computation of time, under rules of Court; but as it may be said, that the Court who made the rules may put their own construction on them, I choose rather to rely on the case I have mentioned, which is on the construction of a statute. One argument urged by the plaintiff, it is proper to notice particularly, because it is supported by the respectable authority of the District Court of this city. It is this: That unless the day of entering the award on the docket is included, the defendant could not enter his appeal on that day. If this were so, I should embrace the construction contended for by the plaintiff, but it does not appear to me that such is the consequence, because, if the appeal is entered on the day of the docket entry, it is certainly within twenty days from after the entry; and that would be a case in which, from necessity, the Court would reject the artificial rule of no fraction of a day, and inquire into the hour and even minute in which the award and the appeal were entered. The party has a right to enter his appeal as soon as he pleases after the entry of the award; and of this right, it would be monstrous to deprive him, by a fiction; for when we say there can be no fraction of a day, it is but a fiction; intended, like all other legal fictions, to advance justice and not to destroy it. *In fictione juris, semper subsistit æquitas*, and when it would work iniquity it is always discarded. I do not conceive, therefore, that the right of entering the appeal on the same day, will be at all affected by our decreeing, that when it is not so entered, the Court will presume that the award was docketed on the last minute of the day, and allow the twenty days next following, for entering the appeal. The defendant's counsel made another point, that the last of the twenty days happening on Sunday, the law allowed one day more for the appeal. It is unnecessary to decide this, as I am of opinion, on the first point, that the appeal was entered in good time."

*Yeates* and *Brackenridge*, Js. concurred substantially in this opinion, and the appeal was holden well brought.

The same point was decided in *Browne* v. *Browne*, (3 Serg. & Rawle's Rep. 496,) as to the time within which an appeal should be brought from an alderman to the Court of Common Pleas. The words of the statute giving this appeal, required it to be brought " within twenty days after judgment being given." The judgment was the 1st March, and appeal the 21st of March, in the same year, and holden well, on error to the Supreme Court of Pennsylvania.

NEW YORK,        The mode of computing time often becomes important under the statute
May, 1824.    of limitations, as to which, in addition to the solitary English case of *Nor-*
_____ *ris* v. *The Hundred of Gautris*, which is the most fully reported in Hobart,
Ex parte      139, the following case will be found of use:
Dean

A    promise       JOHN PRESBREY *et al. v.* JOSHUA WILLIAMS, 15 Mass. Rep. 193.]   As-
made  on  the sumpsit on a promissory note, dated February 16th, 1810, payable on de-
1st of Novem- mand.    The action was commenced on the 1st day of November, 1817.    The
ber, 1811, was
sued  on  the defendant pleaded the statute of limitations, on which issue was joined.
1st of Novem- Upon the trial of this issue, before the Circuit Court of Common Pleas, for
ber, 1817, and this circuit, it appeared that, on the 1st of November, 1811, a payment was
it  was  holden
to be barred by made and endorsed on the note; and the plaintiffs relied on this, as suffi-
the statute of cient to maintain the issue on their part.
limitations.

          The cause was entered in this Court, according to the provisions of the
       statute of 1817, c. 185, with a bill of exceptions containing the facts above
       stated.

          *W. & F. Baylies,* for the plaintiffs, contended that the action was brought
       within six years, next after the new promise or acknowledgment, made on
       the 1st of November, 1811; and that the day of the promise ought to be
       excluded in the computation, as is done in the case of a note payable in a
       certain number of days from or after the date.    (8 Mass. Rep. 453, *Henry*
       *v. Jones.*)    So as to goods or estate attached, which are to be held for the
       space of thirty days next after final judgment, it has been decided, that the
       day after the judgment is rendered, is the first of the thirty days.    (11 Mass
       Rep. 205, *Portland Bank* v. *Maine Bank.*)    They cited also the cases of
       *Pugh & ux.* v. *Duke of Leeds,* (Cowp. 714,) and *Holden* v. *James, Adm.*
       (11 Mass. Rep. 400,) in which last case, it is said by the Court, that where
       an administrator had accepted the trust on the 2d of December, 1806, the
       four years limited by law for bringing an action against him, expired on the
       2d of December, 1810.

          *J. M. Williams,* for the defendant, cited the cases of *The King* v. *Adder-*
       *ly,* (Doug. 463,) and *Castle & al.* v. *Burditt & al.,* (3 D. & E. 623,) and ob-
       served that a promissory note, made on the 1st of November, 1811, and pay-
       able in one day from or after its date, would not be payable until the 2d of
       November ; whereas, in the case at bar, the note was payable on the 1st of
       November, 1811, and an action might have been commenced upon it on that
       day.    He relied on the case of *Norris* v. *The Hundred of Gautris,* which is
       mentioned in Doug. 465, where the robbery was committed on the 9th of
       October, and the action was commenced on the 9th of October, in the fol-
       lowing year; and it was held not to have been commenced "within one
       year next after the robbery."

          JACKSON, J. delivered the opinion of the Court.    In the computation of
       time, the question, whether the *terminus a quo* shall be included or exclu-
       ded, has been differently decided, not only according to the words made use
       of in the different cases, but according to the subject matter or the context,
       where the same words are used.

By the statute of limitations, it was intended that the plaintiff should have six full years, and no more, within which to bring his action. In this case, he might have brought his action on the 1st of November, 1811, as upon the new promise then made, (supposing that the action had been previously barred by the statute,) and if he may also commence it on the 1st day of November, 1817, it would make seven first days of November, in the six years prescribed by the statute.

In the construction of a promissory note, payable in a certain number of days, the day of the date is excluded; because, otherwise a note payable in one day, would be the same as a note payable on demand; and this is the reason given in the case of *Henry* v. *Jones*, cited in the argument. In the case of goods or estate attached, the legislature intended that the creditor should have thirty days, within which to levy his execution; and as he cannot sue out execution until the day after the judgment, it was rightly considered that that day ought to be excluded

In the case of *Holden* v. *James, Adm.*, this point was not before the Court, as that action was not brought until long after the 2d of December, 1810. The expression quoted appears to be inaccurate, as applied to the statute referred to in that case. But whether so or not, it is manifest that the Court were not then considering whether the first day should be excluded or included; and of course, the case furnishes no authority on the point now in question.

The case of *Norris* v. *The Hundred of Gautris*, cited in the argument, is a direct authority in support of the opinion which we have adopted, that the action was not brought within six years next after the cause of action accrued.