## Case No. 395.
### In re ANKRIM.
[3 McLean, 285.][1]

Circuit Court, D. Michigan.   Oct. Term, 1843.

CONSTITUTIONAL LAW — EX POST FACTO LAWS — FRACTIONAL PART OF A DAY—BANKRUPTCY.

1. A petition under the bankrupt law, filed on the 3d March, 1843, the day the law was repealed, is within the saving of that act.

[Cited with approval in Salmon v. Burgess, Case No. 12,262.]

[2. See The Ann, Case No. 397, as to the time an act takes effect.]

[See note at end of case.]

3. Formerly acts of parliament were held to take effect from the commencement of the session.

4. And by this relation penalties amounting to forfeiture of life were incurred.  This was afterwards remedied by statute.

5. The act repealing the general bankrupt law, saved all cases commenced before the passage of the repealing act.

[Cited in American Wood-Paper Co. v. Glen's Falls Paper Co., Case No. 321a; Re M'Kenna, 9 Fed. 29.]

6. If by a fiction of law this act can be made to relate to any time before the actual passage of it, it is liable to the same objection as the English former rule.

[Cited in American Wood-Paper Co. v. Glen's Falls Paper Co., Case No. 321a.]

[See note to The Ann, Case No. 397.]

7. The maxim that the fraction of a day is not recognized in law, cannot be made to operate cruelly and unjustly.

[Cited in The American Wood-Paper Co. v. Glen's Falls Paper Co., Case No. 321a; with approval in Salmon v. Burgess, Id. 12,262.]

[See note to The Ann, Case No. 397.]

8. A liberal construction may be given to the repealing act, in favor of the remedial proceedings under the general bankrupt law.

[Cited with approval in Salmon v. Burgess, Case No. 12,262.]

9. An application for a discharge in this case, is but the extension of the original proceeding.

[Cited in Re Brockway, 12 Fed. 71.]

In bankruptcy.

Barstow, for plaintiff.
Joy, for defendant.

Opinion of the Court.

At the suit of his creditors, the petitioner having been declared a bankrupt, filed a petition for his discharge on the 3d March, 1843, and the only question in the case is, whether it was filed in time. This question has been certified to this court, under the bankrupt act, from the district court. The act repealing the general bankrupt law, was passed the 3d March, 1843, and provided that "(the repeal,)" "shall not affect any case or proceeding in bankruptcy, commenced before the passage of that act." In Matthews v. Zane, 7 Wheat. [20 U. S.] 164, the court say, "the known rule being, that the

[1][Reported by Hon. John McLean, Circuit Justice.]

statute, for the commencement of which no time is fixed, commences from its date." In England, it was long held that "every statute begins to have effect, unless a time for its commencement is therein mentioned, from the first day of that session of parliament in which it is made." Baco. Abr. 636, Let. "C.:" and this was applied to criminal as well as civil cases. In the case of the King v. Thurston, 1 Lev. 91, by this relation, an act was made murder, which was not so when the act was committed. And this rule of construction was sanctioned by the house of lords.   Panter v. Attorney General, 6 Brown, Parl. Cas. 486. The monstrous injustice of this was remedied by the statute of the 33 Geo. III. c. 13, which declared that statutes should have effect only from the time they received the royal assent. It is unaccountable that this construction should have been continued by the English courts down to the year 1772. Nothing could show more forcibly with what pertinacity enlightened judges adhere to an established construction of statutes. This is not objectionable, where no injustice is done to private rights by the construction. But where, as in the above case, the law was made to have a retrospective effect, even to the forfeiture of life, it is a reproach to the tribunals of justice. In our government, such a statute would be ex post facto, and in violation of the constitution of the United States. The injustice of this construction in regard to civil rights, is equally clear, except where the provision is of a remedial character. Chancellor Kent (1 Comm. 455) says, "a retroactive statute would partake in its character of the mischiefs of an ex post facto law, as to all cases of crimes and penalties; and in every other case relating to contracts or property, it would be against every sound principle."

The rule of construction in this country, is that a statute takes effect, if not otherwise provided, on the day of its passage, including that day. Now this embraces the principle repudiated by the British statute. And no better reason is given than that the fraction of a day cannot be recognized in law; and as the statute was passed on the 3d of March, that day must necessarily be included.

That to notice the fraction of a day would be productive of inconvenience, is readily admitted. In most cases where no rights are impaired by the statute, there could be no ground of complaint; but suppose a legislature should make a certain act a capital offence, and the law should take effect on the day of its date, could an individual be punished under it, for an act done on the same day, but before the statute was, in fact, passed. If, in such a case an individual could be punished, it would be in virtue of a fiction of law; and there is no difference in principle, in a fiction that shall give the act a retroactive effect of half a day or half a

year. In the one case, as well as in the other, when the act complained of was done, it was innocent, but a statute, subsequently passed, makes it penal. And if punishment in the one case can be inflicted, it may be in the other. The only difference is in time, not in principle.

A rule of construction which leads to such a result, cannot be a sound one. Like many technicalities which have grown out of judicial action, the fiction is sustained neither by justice nor reason. So far as relates to crime, the only reasonable and just rule of construction would be, that until after its promulgation the law cannot take effect. Any thing short of this might well be compared to the edicts of the Roman emperor, who elevated them so high that the people could not read them. Indeed, our modern legislation would be more cruel, unjust, and revolting. By great effort, possibly, the edicts might have been read, but no human effort can read that which belongs to the future, and which depends upon contingencies. But after the law is passed, who can have notice of it until it shall be published.

Remedial laws are not objectionable on this ground. They only remove a technical objection, and give effect to a bona fide transaction, as was the intention of the parties. But to all other legislation affecting personal rights, the objection holds. In the case of Pugh v. Duke of Leeds, Cowp. 714, there was much discussion whether the words in a lease, "to commence from the day of the date," meant inclusive or exclusive of the day it bore date. Lord Mansfield, after a laborious discussion, overruled his former decisions, and came to the conclusion that the words might be construed to include or exclude the day of the date, as from the context might appear to have been the intention of the parties. In that case, as the validity of the lease depended upon its taking effect on the day of its date, and as the court presumed it was the intention of the parties to make a valid lease, they held that the lease took effect on the day it was dated. But prior to that decision the general view had been, that "from the day of the date," in an instrument, excluded the day of the date.

All who are acquainted with the history of legislative action in congress know that bills passed on the 3d of March, in what is called the short session, are signed by the president late in the evening of that day, and are not published until some days afterwards. But the repealing act in question provides, "that it shall not affect any case or proceeding in bankruptcy commenced before the passage of that act." Now suppose by a fiction the repealing law would take effect so as to include that day; still the saving goes to the passage of the act, and not to the time it took effect. Where the computation of time in a statute is to be from an act done, the first day should be excluded. Ex parte Dean, 2 Cow. 605, 606; Homan v. Liswell, 6 Cow. 659. But this cannot be considered an original application for the benefit of the act. The petitioner having been declared a bankrupt on the 3d of March, 1842, he applied for his discharge. This is a proceeding depending upon the procedure of his creditors and inseparably connected with it. In fact and in law, it must be considered as a continuation of the former proceeding. In this view no doubt can be entertained, as the petitioner was declared a bankrupt before the repeal of the bankrupt law.

There is nothing in this application to prevent the court from giving a liberal construction of the saving in the repealing act, with the view of carrying out the remedial provisions of the bankrupt law. Upon the whole, I think the petition for the discharge, filed the 3d of March, 1843, was within the statute, as the decree of bankruptcy against the petitioner, in the form presented, constitutes a part of those proceedings; and that, consequently, the district court has jurisdiction of the petition, and may act upon it as the law authorizes. This opinion may be certified to the district court.

[NOTE. The supreme court of Vermont held that a petition filed March 3, 1843, was too late. In re Welman, 20 Vt. 653; In re Howes, 21 Vt. 619. Contra, see The Ann, Case No. 397.]