Masten, J.
The plaintiff and defendants claim title to the lands in question from Elijah A. Bigelow as a common source.
I will briefly consider the questions presented on the trial, which, it is supposed, affects the title of the one or the other party.
It is contended on the part of the defendants that the Hatch judgment, under which the plaintiff claims title to the lands in question, was never a lien upon those lands.
This claim is based upon the position that the assignment by Bigelow to the receiver appointed in the creditor’s suit, relates back to the filing of the bill in that suit.
*96 I am of the opinion that as against Hatch, the receiver’ s title does not relate back to the time of the filing of the bill in the creditor’s suit; and that Hatch’s judgment, having been docketed prior to the assignment by Bigelow to the receiver, was, notwithstanding that it was docketed subsequent to the filing of the bill, a lien upon the lands in question as against the receiver, or any person claiming from or under the receiver. As against persons not parties to the creditor’s suit, the title to the lands in question passed from Bigelow to the receiver0by force of the assignment only, and as of the time the assignment was delivered in fact.
At the time of the docketing of the Watson judgment, and at the time of the filing of the creditor’s bill thereon against the judgment debtor Bigelow alone, Bigelow was in the actual possession, and seized in fee simple absolute of all the lands in question.
The remedy provided by law to subject these lands to sale for the satisfaction of the Watson judgment, by virtue of an execution thereon, was complete and unembarrassed.
The aid of chancery to reach these lands was not necessary. An order in the creditor’s suit directing the receiver to sell these lands to satisfy the Watson judgment, would have been improper, as subversive of “the whole policy of our laws in respect to the liens by judgment, and sales to enforce the same,” and of the right of redemption secured by them, which equity favors (Chautauqua County Bank v. Risley, 19 N. Y., 369 ; Lansing v. Easton, 7 Paige, 364). Ho such order was ever made.
The petition of Bigelow in bankruptcy was not filed until some time after Bigelow had assigned to the receiver ; the lands in question therefore passed, by operation of law, to the assignee of Bigelow in bankruptcy, upon his appointment, subject to .the rights of the receiver, and to the liens of the Watson judgment and the Hatch judgment.
It is further contended on the part of the defendants *97 that the plaintiff’s action is barred by the statute of limitations.
To bring the case within the statute, the defendants, or those under whom they claim, must have held and possessed the lands adversely for twenty years; and the plaintiff’s right of entry and pf action must have accrued twenty years before the commencement of the action. To constitute adverse possession, to bar the action, the defendants, or those under whom they claim, must have made an actual, visible, and notorious entry into the possession of the lands, and continued such possession for twenty years, under claim of having the entire title to them, of being the owner of them in opposition to all the world,—in the language of the statute, “under claim of title exclusive of any other right” (2 Rev. Stat., 294 ; Smith v. Burtis, 9 Johns., 174; Livingston v. Peru Iron Co., 9 Wend., 511; Hoyt v. Dillon, 19 Bard., 644 ; Jackson v. Johnson, 5 Cow., 74 ; Clarke v. Hughes, 13 Bard., 147; Howard v. Howard, 17 Id., 633; 2 Smith's Lead. Cas., 393).
By the common law of England, corporations can take a fee simple in lands for the purpose of alienation, but only a determinable or base fee for the purpose of enjoyment. On them dissolution, them unsold real estate reverts to the grantor, their personal property vests in the king, and the debts due to and from them become extinct.
In this State, corporations can take a fee simple in lands both for the purpose of alienation and enjoyment; and upon their dissolution their property, personal and real, are applied first to the discharge of their debts and obligations, and the remainder is distributed amongst the stockholders (2 Rev. Stat., 600 ; Owen v. Smith, 31 Bard., 641).
When corporations, under the delegated right of eminent domain, acquire lands for public use, they will hold them by the title which they are authorized to take by the statute under which they proceed (People v. White, 11 Bard., 26 ; Heyward v. Mayor of New York, 7 N. Y. *98 [3 Seld,], 314; Rexford v. Knight, 11 N. Y. [1 Kern.], 308 ; Mahon v. New York Central R. R. Co., 24 N. Y., 658; De Varaigne v. Fox, 2 Blatchf., 95).
The Attica & Buffalo Railroad Company, by the proceedings by which it took the lands in question, did not become seized of them in fee simple absolute. It simply became possessed of them during the continuance of its corporation, to use them for the purpose of its road.
The defendants, and those under whom they claim, have been in the open and notorious possession of these lands for more than twenty years before suit was brought, claiming to have the right to them which the statute authorized to be acquired, and no other.
I question much whether possession under such claim, however long continued, is possession “under claim of title exclusive of any other right ” to constitute adverse possession. I will pass this, to consider whether the right of action or of entry of the plaintiff, or those under whom he claims, accrued more than twenty years before the commencement of this action.
At the time when the Attica & Buffalo Railroad Company instituted proceedings to take these lands, and under which they subsequently entered into the possession of them, Hatch’s judgment was a lien upon them. It was a general lien, a statutory lien. It gave no right to the possession of the lands, and could only be enforced against them by a sale of them made within the time and in the manner prescribed by statute.
By virtue of an execution on Hatch’s judgment, these lands were sold within the time, to wit: on August 10, 1844, and in the manner prescribed by statute. The purchaser at the sale was entitled to a deed of them from the sheriff on November 11, 1845.
But neither the sale, nor the fact that the fifteen months had elapsed, and the purchaser was entitled to a deed of the lands, vested the title of them in the purchaser, or gave him any right of entry upon them, or of action to recover the possession of them. The statute is that the right and title of the person against whom the *99 execution issued, to any real estate sold thereby, shall not be divested by such, sale until the expiration of fifteen months from the time of such sale, nor until a deed shall have been executed in pursuance of the sale (2 Rev. Stat., 373).
The sheriff’s deed to the purchaser at the sale under the execution on the Hatch judgment (for some reason which does not appear, and is not material), was not executed and delivered until January 23, 1846. The right of the purchaser at that sale to make entry upon or to bring action for the recovery of the land, accrued on the day of the delivery of the sheriff’s deed (2 Rev. Stat., 600 ; Smith v. Colvin, 17 Barb., 157).
By the well-settled rule of computing time in this State, the plaintiff had the whole of January 23, 1866, in which to bring his action. It was brought on that, the last day {Exp. Dean, 2 Cow., 605 ; Snyder v. Warren, 2 Id., 520 ; Haner v. Siswill, 6 Id., 660; People v. Sheriff of Broome, 19 Wend., 87; Cornell v. Moulton, 3 Den., 12; Phelan v. Douglass, 11 How. Pr., 193; People v. New York Central R. R. Co., 28 Barb., 284; Peck v. Hulbert, 46 Id., 559).
In Cotton v. Phillips (20 Penn. [8 Harr.}, 184), it was said that “a possession which would bar the debtor would divest'the rights of the creditor.”
That would be the case in this State if the lien of the judgment attached subsequently to the adverse entry, and after the statute had commenced to run.
But such is not the case if the judgment is a lien on the lands at the time when the adverse entry is made upon them.
By our statutes a judgment is a charge upon the lands of the judgment debtor which he has at the time of the docketing of the judgment, or shall acquire at any time thereafter; but after ten years from the time of docketing it ceases to bind the lands as against purchasers in good faith, and subsequent incumbrancers. The judgment is enforced against the lands by a sale of *100 them on execution issued on the judgment (2 Rev. Stat., 359).
By virtue of the execution the sheriff sells the lands which the defendants had at the time of the doclceting of the judgment, or at any time afterwards.
The judgment debtor has one year in which to redeem the lands from the sale, and, if he omits to do so, his judgment creditors have three months thereafter in which to acquire the rights of the purchaser at the sheriff’s sale.
Upon the expiration of fifteen months from the time of the sale, if the lands have not been redeemed within the year by the judgment debtor, the sheriff is to complete the sale by executing a deed to the original purchaser, or to the creditor who has acquired his rights, —which deed conveys “ all the right, title and interest which was sold by the sheriff.”
The title of the judgment debtor to the lands is not divested until the sale is completed by the execution and delivery of the sheriff’s deed (2 Rev. Stat., 367-374).
It will thus be seen that, by virtue of the judgment, the sale under the execution thereon, and the sheriff’s deed, the grantee therein acquires, at the time of the delivery of the deed, the title which the judgment debtor had to the lands at the time the judgment became a charge upon them.
Now, if a judgment should be recovered against a person having the legal title of lands in fee, and docketed so as to become a charge or lien upon them, and the next day thereafter a person should enter and continue in the possession of them adversely under claim of title, and if nine years thereafter the judgment creditor should cause the lands to be sold by virtue of the execution on his judgment, and within one year from the sale the judgment debtor should redeem the lands from the sale, he would have to bring action for the possession of them within twenty years from the time the adverse entry was made. But if the judgment debtor failed to redeem the lands .from the sale, the purchaser would have twenty *101 years from the time the sale was completed by the delivery of the sheriff’s conveyance to Mm, in which to bring action against the adverse possessor for the recovery of them.
In such case, until the execution sale is completed, the statute limiting the time in which actions to recover the possession of lands are to be brought has no application.
I am of the opinion that this action is not barred by1 the statute.
It is further contended that, by the provisions of the statute incorporating the Attica & Buffalo Railroad Co., and under which the lands in question were taken, the owners of the lands only are to be made parties to the proceeding, and that creditors having a statutory lien thereon by judgment, were not necessary parties.
I suppose, if the true construction of the statute be what the defendant contends for, the statute is not, in this case, obnoxious to any constitutional objection; for it was enacted before the Hatch, judgment was recovered.
The lien of that judgment attached therefore, subject to be affected by proceedings instituted against the persons and conducted in the manner prescribed by that statute.
At the time the proceedings to acquire these lands were instituted, the Hatch judgment was a general lien or charge upon them.
The execution on that judgment, by virtue of which they were sold, was not issued until after these proceedings had been brought to a close, and possession of the lands taken under them.
The proceedings of the Attica & Buffalo Railroad Co. were against the lands themselves, in rem ; the owners of the lands were under the constitution necessary parties, and common justice suggests that some notice of the proceedings or monition should be given to persons like Mr. Hatch, having liens on the land which would equitably entitle them to the compensation money, or some portion of it.
The statute should not be construed to dispense with *102 notice to such persons, unless such "be its plain meaning and intent.
The statute under consideration prescribes with particularity the course to be pursued by the Attica & Buffalo Railroad Company to take lands for the use of its' road, who are to be made parties to the proceeding, the manner in which the compensation for such lands is to be ascertained, and to whom such compensation must be paid.
The act provides that the corporation may present its petition to the vice-chancellor of the eighth circuit, setting forth the necessity, &c., and “the name and residence of the owner.” The said vice-chancellor shall direct such notice to be given to the owner or owners of such lands as he shall deem proper and reasonable, of the time and place of hearing the parties, and upon proof of due service of such notice, he shall appoint three competent and disinterested freeholders to appraise said lands.” Notice of the time and place of the meeting of the appraisers is to be given to the owner. The appraisers are to assess the value of the land taken, and the damages such owners may sustain by the taking of their lands, by injury to buddings, and in the construction of such road, without any deduction on account of any real or supposed benefit, which such owners of such lands may derive by the construction of such road, and are to make report to said vice-chancellor. The said vice-chancellor is to examine the report and hear the parties, and may increase or diminish the amount awarded.
“Upon proof to the said vice-chancellor, within thirty days after his determination, of the payment to the owner, or of the depositing to the credit of the owner in such bank as the said vice-chancellor shall direct, of the amount of such appraisement, the said vice-chancellor shall make a decree or order particularly describing the lands, and reciting the appraisement, and the mode of making it, and all other facts necessary to a compliance with this act, and which order shall be recorded in the office of the clerk of the county in which the land is situ *103 ate; and the said corporation shall thereupon become possessed of such land, during the continuance of the corporation, and may use the same for the purposes of said road” (Laws of 1836, 323 ; Laws of 1843, 226 ; Laws of 1834, 228).
The provisions of the act seem to me too plain to admit of doubt, or of room for construction.
It may be worthy of notice, that the statute under consideration, when first enacted, required the petition to be presented to, and the proceedings to be conducted before the first or senior judge of the county in which the lands are situate. This was a special tribunal having only the powers given to it by the statute. By an amendment made prior to the commencement of the proceedings under consideration, the petition was required to be presented to and the proceedings conducted before “the vice-chancellor of the eighth circuit.” Were the proceedings in chancery before the vice-chancellor, or before him as an officer ? If they were in chancery, that court, by virtue of its general powers, might possibly have required Mr. Hatch to be made a party to the proceedings, and protected in those proceedings his equitable right to the compensation money.
If it be conceded that the proceedings were in chancery, there is difficulty in reaching the conclusion that such protection could have been given. By the act the vice-chancellor is to appoint appraisers and examine their report, and if he confirms it, the Railroad Company, within thirty days after his determination, must pay to the owner of the land, or deposit to the credit of such owner, in such bank as said vice-chancellor shall direct, the amount of such appraisement.
Upon proof to the said vice-chancellor of th § payment to the owner, or of the depositing to the credit of the owner, in such bank, of the amount of such appraisement, he is to make a decree or order describing the lands, and reciting the appraisement, the mode of making it, and all other facts necessary to a compliance with the act.
*104 This order is to be recorded, and thereupon the railroad company is to become possessed of the lands. I do not deem it necessary to pass upon these questions.
I am of opinion that Hatch was not a necessary party to those proceedings, and that the Attica & Buffalo Railroad Company became possessed of the lands in question, during the continuance of its corporation, as against his judgment.
It follows that the purchaser at the sale under the execution upon that judgment, only acquired the reversion in the lands in question.
It is contended that the proceedings of the Attica & Buffalo Railroad Co. to take the lands, are void because they were entirely conducted before the vice-chancellor; that all of the proceedings, but the appointment of appraisers, should have been before the county judge.
The amendment of 1843 is awkwardly drawn. I am of the opinion that it substituted the vice-chancellor of the eighth circuit in the place of the county judge. I have already pointed out the effect of this amendment, and the mode of proceeding subsequent to it.
I think the omission of the name of Thompson, assignee in bankruptcy, in the orders subsequent to that by which the appraisers were appointed, is not material. He was nevertheless a party to the proceeding. Besides, the force of the assignment by Bigelow to Watson, the receiver, the latter had the legal title of the lands in question, and for this purpose was the owner of them.
There must be judgment for the defendant.*

 At the March general terra, 1869, the judgment of the special term was affirmed.