LANSING & WHITBECK *vs.* EASTON & ROBINSON.

Where an injunction, issued upon a creditor's bill, prohibits the defendant from transferring, assigning, delivering or in any way interfering with or disposing of his property or effects, any active interference with the property, by the defendant or his agent, for the purpose of having the legal title to the same transferred to another and thereby to deprive the complainant of the equitable lien he has acquired thereon by the filing of his bill, is a violation of the letter as well as of the spirit of the injunction.

Thus where two defendants informed a creditor that they had property liable to be reached by execution, and consulted with each other and agreed to procure an execution to be issued, for the purpose of having such property sold thereon, and employed an agent to procure the issuing of the execution, and took and delivered the property to the sheriff who had the execution; *Held*, that such defendants were guilty of a contempt of court in violating the injunction; and they were fined a sum equal to the value of the property *delivered* to the sheriff and to the costs of the proceedings upon the attachment issued against them.

The fact that the defendants in violating the injunction acted under erroneous advice of counsel, will not protect them from a fine sufficient to compensate the adverse party for the injury sustained; although such advice may protect them from further punishment.

Where there has been an actual breach of an injunction, the statute gives the court no discretion but requires the infliction of a fine sufficient to indemnify the complainant for the injury sustained by such breach and to satisfy his costs and expenses. And the defendant cannot, in such a case, be discharged from imprisonment, without the consent of the prosecutor, until the fine is actually paid.

The ordinary injunction, upon a creditor's bill, will not prevent another judgment creditor from levying upon property, which is the proper subject of a levy and sale on execution, before the title of the defendant therein is equitably divested by an order for the sequestration thereof, or for the appointment of a receiver. Neither will the injunction prevent the defendant from confessing a judgment in favor of another bona fide creditor, unless there is a special clause therein to that effect.

THIS case came before the court upon two attachments against the defendants; the one upon the application of the complainants for an alleged breach of the injunction, and the other upon the relation of the receiver, for the neglect

of the defendants to deliver over their property to him according to the order of the court.

*M. T. Reynolds*, for the relators.

*J. Rhoades*, for the defendants.

THE CHANCELLOR. The answers of the defendants to the interrogatories, in connection with their original examination before the master, show a palpable breach of the injunction in this case, by each of them. The ordinary injunction upon a creditor's bill, which only operates upon the defendant, will not of course prevent another judgment creditor from levying upon property of the defendant which is the proper subject of a levy and sale on execution ; before the title of the defendant in such property is equitably divested, by an order for a sequestration thereof or for the appointment of a receiver. Neither will the injunction, unless there is a special clause therein to that effect, prevent the defendant himself from confessing a judgment in favor of another bona fide creditor, instead of driving the creditor to the expense of a suit ; although the defendant knows it is the intention of such creditor to obtain a preference by levying on the property. But as the injunction prohibits the defendant from transferring, assigning, delivering, or in any way interfering with or disposing of his property or effects, any active interference with the property, by the defendant or his agent, for the purpose of having the legal title to the same transferred to another, and thereby to deprive the complainant of the equitable lien he has acquired thereon by the filing of his bill, is a violation of the letter as well as of the spirit of the injunction. In this case the defendants did not content themselves with simply informing their friendly creditors that they had property which was liable to be reached by execution, and leaving such creditors to act as they thought proper upon that information. On the contrary they expressly admit that they consulted together and agreed *to procure* an execution to be issued against them, for the purpose of having their four watches and establish-

ments sold thereon; and they employed an agent to procure the execution to be issued accordingly. Not satisfied with this interference in causing the execution to be issued to the sheriff of New-York, through the medium of their attorney and agent who then assumed to act as the agent of the plaintiffs in the execution also, they were guilty of a direct and palpable violation of the injunction by taking the watches of themselves and their wives and delivering them to the sheriff at his office; because they probably supposed he would not come to their houses to take the watches from them. In the original answer of Robinson to an inquiry before the master, he admitted that he delivered both of his watches as well as his wife's silver tea spoons, to the sheriff. But in his answer to the interrogatories in this case he shows that he had been guilty of another breach of the injunction, by pledging one of the watches for $30, previous to the issuing of the execution. And he expressly admitted, on both of his examinations, that the two watches were in his possession or under his control at the time the injunction was served upon him.

Each defendant therefore must be declared guilty of having violated the injunction; and a fine must be imposed upon each, sufficient to cover the value of the property which he has voluntarily dispossessed himself of, in violation of the injunction, and his share of the costs of this proceeding. The only evidence of the value of the watches is the examinations of the defendants themselves before the master who appointed the receiver. Eaton there says, that one of his watches, with the chain, cost about $150, and the other about $100. The fine upon him, exclusive of his share of the costs which must be taxed and added thereto in drawing up the order, will be $250. Robinson's estimate of the cost of his two watches, with the chains and key, is about $214,50; to which is to be added the value of the spoons, estimated by him at $7,50. These two sums, together with his share of the costs, will constitute the amount of the fine to be imposed upon Robinson. The order and mittimus must be so drawn as to specify how much of the fine is for the property thus taken and sold, and how much for

the costs and expenses of the complainants upon these proceedings; and that the first be paid to the receiver, to abide the further order of the court, and the last to the complainants' solicitor, to satisfy such costs and expenses.

The fact that the defendants acted under the erroneous advice of counsel, to whom they applied for information how they could elude the justice of this court and at the same time avoid punishment for a breach of the injunction, cannot protect them from a fine sufficient to compensate the adverse parties for the injuries they have sustained by the wrongful acts complained of; though it may furnish a ground to justify the court in refusing to inflict a further punishment upon the offenders, for a violation of its order. Where there has been an actual violation of the injunction, either with or without the advice of counsel, the court has no discretion to impose a mere nominal fine; as the statute is imperative that the fine shall be sufficient to indemnify the complainants for the injury they have sustained thereby, and to satisfy their costs and expenses. (2 *R. S.* 538, § 21.) Neither is there any way in which the defendant in such a case can be discharged from imprisonment, without the consent of the prosecutor, until the fine is actually paid. Counsel, therefore, should be very cautious how they advise their clients to do any act which may be adjudged by the court to be a contempt; and which may perhaps subject the client to perpetual imprisonment if he should be unable to pay the fine which the law compels the court to impose upon him in such cases.

As to the contempt of these defendants, of which the receiver complains, I have not been furnished with the necessary papers to enable me to dispose of the case; as I do not find, among the papers furnished, the order requiring the defendants to deliver over their property, or the interrogatories to which Eaton put in his answers before the master. The affidavits on which the attachments were founded must also be produced, to enable me to judge what is the precise charge intended to be made against the defendants by the receiver. The decision upon that application must therefore be suspended until those papers are furnished.