## FENNER and HARDENBURGH *vs.* SANBORN.

A court of equity in this state, having obtained jurisdiction of the person of a defendant, by the service of process upon him here, can compel him to execute to a receiver or purchaser such formal conveyance or assignment of real estate owned by him out of the state as may be necessary to pass the title thereto, under the laws of the state where it is situated; and in default of the defendant to execute the same, he may be punished as for a contempt.

The same or a similar power is possessed and may be exercised by a justice of this court or county judge, in a proceeding supplementary to execution.

And if, after the commencement of supplementary proceedings against a judgment debtor and his examination before a referee, but before a receiver has been appointed, the debtor, while an injunction order restraining him from transferring or interfering with his property, is in force, creates a lien upon his real estate situate in another state, by confessing a judgment to another, for a fictitious debt, this is a contempt, for which he may be punished, by a fine to the amount of such judgment.

APPEAL from an order of the county judge of Genesee county imposing a fine of $500 on the defendant, for the violation of an injunction order made by said judge in a proceeding in this action supplemental to execution.

*Wakeman & Bryan,* for the respondents.

*T. Hastings,* for the appellant.

*By the Court,* HOYT, J.   The injunction order in this case required the defendant to appear before the county judge on the 8th of August, 1861, to be examined on oath as to his property, and by it the defendant was forbidden to transfer or make any other disposition of any property belonging to him not exempt by law from execution, or in any manner to interfere therewith, until further order in the premises.   The defendant was, on said 8th day of August, examined before a referee appointed by said county judge, and on such examination disclosed the fact that he was the owner of 160 acres of land in or near Leclear county, in the state of Wisconsin.

The alleged violation of the injunction consisted in the giving by the defendant, after such examination and before the proceedings were concluded, a note for $500 to his father-in-law, Ira Norton, jun., on an alleged indebtedness to him, and then himself taking the note inclosed in a letter from said Ira Norton, jun. to his brother J. B. Norton in Michigan, and then taking from him a letter inclosing the note to an attorney at Milwaukee in the state of Wisconsin, and there confessing a judgment to the said J. B. Norton for the amount of said note, and informing the attorney where his said land was situated. This was done between the 8th and 17th of August, to which latter time the proceedings upon such examination had been adjourned.

The first and important question is whether these acts of the defendant were a violation of the injunction order. It is claimed by the defendant that by the supplementary proceedings the plaintiffs could obtain no title to land out of the state, and therefore the confession of the judgment, although intended to create a lien upon and give said Norton a preference over the plaintiffs in the collection of said judgment from the lands in Wisconsin, could be no violation of the injunction.

It was perfectly well settled that a creditor's bill in chancery did not create a lien upon the real estate of the judgment debtor out of the state, but that the court, having jurisdiction of the person of the defendant by the service of process on him in this state, could compel such debtor to appropriate lands or other property owned by him out of the state to the payment of his debts, by compelling him to assign and transfer the same to a receiver to be appointed by the court. (*Mitchell* v. *Bunch,* 2 *Paige,* 606. *LeRoy* v. *Rogers,* 3 *id.* 237. *Edw. on Receivers,* 5 *and* 356. 2 *Barb. Ch. Pr.* 148.) And the same principle has been recognized by the court of appeals in *Bailey* v. *Ryder,* (6 *Seld.* 363.)

Decrees of the court of chancery could not in and of themselves transfer, or direct a sale so as to transfer, the title to

real estate of the debtor situate out of the state, so as to make it effectual in such state. But having obtained jurisdiction of the person of the defendant, the court could compel him to execute to a receiver or purchaser such formal conveyance or assignment of such real estate as might be necessary to pass the title thereto under the laws of the state where it was situated; and in default of the defendant to execute the same, he might be punished as for a contempt. (*Bailey* v. *Ryder*, 6 *Seld.* 363.)

The next question which arises in this case is whether the same or a similar power is conferred upon and may be exercised by a justice of this court or county judge out of court, in a proceeding supplementary to execution.

By § 244 of the code, a receiver may be appointed during the pendency of the suit, for various purposes; or after judgment, to carry the judgment into effect; or after judgment, when an execution has been returned unsatisfied and the judgment debtor refuses to apply his property in satisfaction of the judgment; or in such cases as were (at the passage of the code) provided by law or might be in accordance with the then existing practice, except as otherwise provided in the code. And said section further provides that whenever, in the exercise of its authority, the court shall have ordered the deposit, delivery or conveyance of money or other property, the court, besides punishing the disobedience as for contempt, may make an order requiring the sheriff to take the money or property, and deposit, deliver or convey it in conformity with the direction of the court.

It is quite clear from these provisions that the power of the court is therein preserved to compel a judgment debtor to apply his property to the payment of a judgment against him, and if necessary, to execute a conveyance thereof, whether it be within or without the state, in accordance with the practice existing at the time of the passage of the code.

In proceedings supplementary to execution a justice of this court or county judge, by § 297 of the code, may order any

Fenner *v.* Sanborn.

property of the judgment debtor not exempt from execution, in the hands of himself or of any other person &c., to be applied towards the satisfaction of the judgment. And by § 298, the judge may also appoint a receiver of the property of the judgment debtor, in the same manner and with *the like authority*, as if the appointment was made by the court according to § 244. And by § 302, if any person, party or witness disobey an order of the judge, he may be punished by the judge as for a contempt. Property of the debtor situate within this state, in a proceeding supplemental to execution, vests in the receiver, by force of his appointment. (*Porter* v. *Williams*, 5 *Seld.* 142.)

But the title to real estate of the defendant situated out of the state would not, by virtue of the appointment of the receiver, become vested in him so as to be effectual in the state where the land is situated; but as the judge has power to order all property of the judgment debtor, without qualification as to where it may be situated, (except property exempt from execution,) to be applied to the payment of the judgment, such power can only be effectually executed as to property situated out of the state, by making an order requiring the judgment debtor to execute to the receiver a conveyance of such property, in such form as to be effectual to transfer the title according to the laws of the state where the property may be situated; and for a neglect of the defendant to execute the same pursuant to such order, to punish him for contempt. This power we think may be fairly regarded as conferred upon the judge by the provisions of the code before referred to, in proceedings supplemental to execution.

If we are right in this conclusion, it follows that the county judge in this case might have appointed a receiver of the property of the defendant, and also have required him to execute to such receiver such conveyance as would have been effectual to pass the title to the real estate of the defendant in Wisconsin. But it appears by the papers in this case that before the proceedings for the appointment of a receiver were

perfected, the defendant had confessed the judgment of $500, which it is claimed by the plaintiffs has deprived them of their claim to that extent upon such real estate; or in other words, given the plaintiff in that judgment a priority of lien upon such real estate, and to such extent the county judge has adjudged the plaintiffs in this action to be prejudiced.

It is claimed by the defendant that it is not affirmatively shown that the judgment so confessed has by the laws of Wisconsin become a lien upon the land of the defendant, and that it does not necessarily appear that the plaintiffs have been prejudiced by the confession of the judgment.

It is perfectly apparent from the examination of the defendant before the county judge, and his answers to the interrogatories propounded to him on the proceedings for a contempt, that the sole and only object of the journey of the defendant to Michigan, and from thence to Wisconsin, was to confess the judgment referred to, so as to enable the plaintiff therein to obtain a lien upon the defendant's land in Wisconsin, and thereby enable him to get a priority of lien upon such lands over the plaintiffs in this action; and the note was doubtless executed after the defendant's examination, to the more easily enable the parties to accomplish such purpose. And we are quite satisfied from the evidence before us that the greater portion of said note, and probably the whole amount of it, was for a pretended indebtedness not actually due from the defendant to Ira Norton, jun.; the evident object and purpose of the parties being to create such lien, and the attorney taking the confession having been informed by the defendant of the location of his said land, we think, in the absence of proof to the contrary, we are at liberty to infer that the judgment has been made an actual lien upon said land. The defendant had at least, by his own voluntary act, put it in the power of the plaintiff in that case to obtain such preference. We do not think, therefore, that this objection is available to the defendant.

But it is also claimed by the defendant that there was no

Fenner *v.* Sanborn.

proof of the value of the land, before the county judge, on the proceedings for a contempt, from which he had a right to find that the injury to the plaintiff amounted to $500. In answer to an interrogatory as to his opinion of the value of the 160 acres of land in Wisconsin, the defendant said he was unacquainted with the value of the land, and could form no opinion on that subject. In answer to an interrogatory as to the value of the consideration he had paid for the land, according to the best of his knowledge and belief, his answer was " that he insisted he was not bound to answer the same, because it relates only to matters not pertinent to the question then pending."

The defendant having disclaimed any such knowledge of the land in Wisconsin as to enable him to express an opinion upon the subject, it was clearly competent to show what he paid for it, as affording some evidence of its value ; and had it been deemed necessary, he would no doubt have been required to answer the question. . But as the county judge had before him the evidence given by the defendant before the referee, to show that when he purchased the storehouse which he exchanged for this land, it was valued at some $1300 or $1400, the judge was thus furnished with some evidence of its value.

Taking into consideration the fact that the defendant had exchanged property for this land, which a few months before he had received at a valuation of $1300 or $1400, and that he had taken pains to make a journey to Milwaukee evidently for the sole purpose of securing to his relative and friend $500 upon it, we think the judge was well warranted in finding that it was of a value at least as much as the $500 judgment given by the defendant to become a lien upon it. It can hardly be said that the judge acted without any evidence upon the subject.

The only other question necessary to be examined is whether or not the confession of judgment in this case, under the circumstances detailed, was a violation of the injunction ; as-

suming, as we may, that it has become a lien upon said land in Wisconsin. The mere act of confessing a judgment to a *bona fide* creditor, for an actual indebtedness, without doing any other act to interfere with his property, by a debtor under an injunction like the one in this case, would not be a violation of such injunction. (*McCredie* v. *Senior,* 4 *Paige,* 378. *Lansing* v. *Easton,* 7 *id.* 364.) The first of these cases was a bill filed by the plaintiff against the defendants, as alleged copartners, for a settlement of the partnership accounts. An injunction was issued restraining the defendants from intermeddling with the property and effects of the firm. One of the defendants, R. Senior, denied that he was a copartner. After the injunction he, acting as the agent of H. Glazebrook, a creditor of the copartnership, employed an attorney to commence a suit against the plaintiff and E. Senior, the conceded partners. A suit was commenced, and E. Senior employed an attorney to appear and give a cognovit for both defendants, which was done, and judgment entered. On a motion against the defendants for an attachment as for a contempt, the chancellor held that the injunction did not inhibit the defendant E. Senior from giving preferences to creditors by confessing judgment, and did not restrain Richard Senior from acting as the agent of creditors in the collection of their debts against the firm. That the facts stated in the complaint did not entitle the complainant to an injunction to enjoin the creditors of the firm from proceeding at law to collect their just debts, or to restrain a member of the firm from confessing a judgment to such creditors to give them a preference in payment. That the proceeding was not therefore a violation of the letter or spirit of the injunction. It will be observed that in that case the plaintiff was only entitled to his share of the partnership assets after all the just partnership debts were paid. He therefore had no reason to complain of the proceedings instituted for the collection of just debts against the firm.

But the chancellor further says, in that case : " If the al-

legation of McCredie is correct, that R. Senior was a partner, and that nothing was due their creditors from the complainant and E. Senior only, there is reason to believe the whole proceeding on the part of the two Seniors was collusive, with a view to evade the justice of this court. In such a case they may be punished for a contempt, in the same manner as if they had violated the letter as well as the spirit of the injunction or prohibitory order of the court."

In the other case, (7 *Paige*, 364,) the chancellor says, "that the answers of the defendants to the interrogatories, in connection with their original examination before the master, show a palpable breach of the injunction by both defendants. The ordinary injunction upon a creditor's bill, which only operates upon the defendant, will not of course prevent another judgment creditor from levying upon the property of the judgment debtor liable to levy on execution, before the title of the defendant is divested by an order for sequestration." He further says : " Neither will the injunction, unless there is a special clause therein to that effect, prevent the defendant from confessing judgment in favor of another bona fide creditor, instead of driving the creditor to the expense of a suit ; although the debtor knows it is the intention of the creditor to obtain a preference by levying upon property. But as the injunction prevents the defendants from transferring or interfering with the property &c., any active interference with the property by the defendant or his agent, for the purpose of having the legal title to the same transferred to another, and thereby to deprive the complainant of the equitable lien he had acquired thereon by filing his bill, is a violation of the letter as well as the spirit of the injunction."

That case was perhaps a more direct violation of the injunction than has been perpetrated by the defendant in this case. Because the defendants not only informed their creditors that they had property liable to be reached by execution, but they admitted that they consulted together and agreed to procure an execution to be issued against them, for

the purpose of having their four watches and establishments sold thereon, and took their watches and those of their wives and delivered them to the sheriff. In *Ross* v. *Clussman*, (3 *Sandf. S. C. R.* 676,) where the defendant delayed the proceedings supplementary to execution for a long time, and in the mean time confessed judgment and suffered supplemental proceedings to be had thereon by which a receiver was first appointed in that action, it appearing the judgment was confessed with a view of enabling the second judgment creditor to obtain a preference, it was held to be a plain and intentional violation of the injunction in the first proceedings.

In the case now under consideration there can be no doubt whatever, to any rational mind, after reading the examination of the defendant and his answers to the interrogatories, notwithstanding his denials, that the defendant went to Michigan and from thence to Wisconsin, by collusion between himself and his father-in-law, Ira Norton, jun., for the sole purpose of confessing the judgment and making it a lien upon his real estate in question, and to defeat the proceedings of the plaintiffs in this case. In fact he does not deny such to have been his purpose, but declines answering the interrogatories upon that subject. Besides, as has already been said, I think the judgment was confessed not for a bona fide indebtedness, but that the greater part, if not the whole amount thereof, was fictitious. When examined, on the 8th of August, he testified that he thought $350 or $400 would cover all he owed except the debt to the plaintiffs in this case, and then stated that he owed his father $100 which he did not include in the above. He had just been detailing various trades of property with his father-in-law, Ira Norton, jun., and made no allusion whatever to his being then indebted to him. But it had appeared in his examination that up to January 1, 1861, he had been in the grocery business and sold out his store and goods to Peter Rogers for $2450; that there was an incumbrance on his store of about $475, subject to which he conveyed, leaving a balance of about

$1900, for which he took the storehouse in Linden, leaving Rogers indebted to him about $590. For this he subsequently brought an action against Rogers, and before judgment and in the spring he assigned this claim to Ira Norton, jun., and also gave up to him a note of $380 which he then held against him, for which he received a deed of 120 acres of land in Kansas. This land he had deeded to one Sanderson, but it was intended only as a security for $250 which Sanderson had indorsed for him to one Eastman. The $380 note which he held against Ira Norton, jun., and gave up in the trade, was obtained in this way. In March, 1861, the defendant was the owner of a house and lot in Attica, worth $1200. This he conveyed to his father-in-law, Ira Norton, jun., for which he then gave up three notes he held against the defendant, amounting to near $700; and he had indorsed a note of $250 and some $14 interest, and the $380 note was given to the defendant for the balance of the purchase money of the house. So that no longer ago than March, 1861, instead of the defendant being indebted to Ira Norton, jun., he held his note for $380, and the defendant's prior indebtedness to him was canceled.

It also appeared from his examination that he deeded to said Ira Norton, jun. the storehouse in Linden which he had got on the sale of his goods, and took in exchange therefor 160 acres of land in Wisconsin, of the value of which he now claims to be entirely uninformed. It may be well doubted whether these several exchanges of property made by the defendant with his father-in-law were bona fide. In fact I think it quite evident that they were made expressly to place in the hands of Norton all the available means the defendant had in this state, for lands in western states, the value of which was unknown to the defendant, the better to enable the latter to place his property beyond the reach of his creditors, as is now claimed on his behalf was effectually done, because it is claimed that it cannot be reached through the

courts of this state, although the defendant is within their jurisdiction.

But it is said, and said truly, that the defendant cannot in this proceeding be punished as for a contempt, in the violation of the injunction, simply because he had, previous to its issuing, fraudulently disposed of his property. But in determining whether or not there was a bona fide indebtedness from the defendant to his father-in-law of $500, which had been entirely forgotten and overlooked by him in his examination on the 8th of August, for which he subsequently gave his note and the confession of judgment, or whether such pretended indebtedness was fictitious, and claimed and put on foot by collusion between the defendant and his father-in-law, still further to embarrass the plaintiffs in the collection of their debt, an inquiry into the previous state of their accounts and the dealings between them, and as to whether the several trades and shifts of property made between them shortly previous were bona fide or collusive, to enable the defendant to hinder, delay or defraud his creditors, were quite pertinent as bearing upon the *bona fides* or collusive acts of the defenant and his father-in-law, in giving the $500 note and judgment thereon. And looking at this transaction in connection with the previous state of their demands and dealings with each other, I think it quite evident this large indebtedness of $500 was an afterthought, and got up expressly to enable the defendant to give the judgment referred to, and thereby if possible defeat the plaintiffs in the collection of their debt from the land in Wisconsin, which it is conceded the defendant then owned.

The defendant in his pretended explanations, given on his examination before the county judge on the 26th of August, attempts to account for the manner in which this indebtedness arose, or of what it consisted, and says it existed in a note of $200, given in April, 1861, (but for what purpose, or to whom, or upon what consideration, is not stated,) and also a note of $100, or about that sum, given to Ralph Mead

Metcalf v. Van Brunt.

& Co., and indorsed and paid by said Ira Norton, jun., (but when it was given or paid by him, whether before or after the several trades between him and his father-in-law, is not stated.) He further says, that $200 existed in account, of which about $50 was for house rent, and wood and other items, amounting in all to over $100; and the defendant thought, $75 or $80 paid by Norton on notes owing by the defendant, in Attica. When these several items of indebtedness accrued is not stated; and I think it quite fair to presume, when viewed in the light of the previous state of the accounts and dealings between them, that this pretended indebtedness of $500 had no real or substantial existence. And if this be the proper solution of the matter, the giving of the note and subsequent judgment therefor to cover his title to the land in Wisconsin, to be divested by means of the judgment and thereby defeat the plaintiffs in the collection of their debt, was a violation of the spirit of the injunction order, and that the defendant was properly convicted. The fine imposed was no greater than the injury sustained; and being less than the amount due the plaintiffs on their judgment, it was properly imposed, by the county judge.

The order appealed from should be affirmed, with $10 costs.

[ERIE GENERAL TERM, May 12, 1862. *Davis, Grover* and *Hoyt*, Justices.]