## STATE OF DELAWARE,

### *vs.*

## THOMAS M. LIVINGSTON.

*Kent, Sept. T. 1871.*

The defendant in a suit, against whom a decree had been made, discharged from an attachment for costs, upon the ground of insolvency.

ATTACHMENT FOR CONTEMPT.—The defendant was attached for contempt for not performing the decree of the Chancellor in the payment of the sum of $541.40, being the costs awarded against him in the case of *Hall vs. Livingston and Stutzer.**

The defendant had been brought into Court by the Sheriff upon his arrest under the attachment in June A. D. 1871, and discharged upon his undertaking to appear on Sept. 28, 1871, on which day he appeared.

* 3 Del. Ch. 348.

The examination upon interrogatories was dispensed with by agreement of counsel, and the defendant was sworn and examined orally by *Comegys* for the State.

His testimony was substantially as follows :—

I am worth nothing.  My store was closed March 9, '69.  Then thought I was worth something.  Could not collect my books.  Traded with Stutzer March 22 '66.  We estimated store at $4000.  Had no invoice.  I gave him the farms and note for $100.  This was the consideration. Was closed out by a number of creditors.  Sales $997.86. It did not bring over one-third value.  S. Mathews had a claim of $647, borrowed money.  This money applied to note given for bill of shoes to Brown.  I borrowed of Mathews $5.00 to help pay this note.  This was in 1868. The balance, $147, due Mathews for money paid on my account as my surety.

I have no real estate.  My household goods also sold by the Sheriff.  There *is* money due to me on the books —over $1000—perhaps as much as $1500.  I can't collect it.  I have tried constantly.  I now make my living by driving the wagon, and get $15 per month—not constantly —will average.  I can't say I have $15 certain.  If I am worth more he is to pay me.  Deductions when I am at home.  Don't think wages average more than $10 per month.  I have no other means except what I can collect. I live very poorly.  Once in a while I get a dollar or two on the books.  Can't say how much it costs me to live.

The defendant was discharged.

NOTE.  Attachments for the failure to perform a decree have not been numerous in this State, at least so far as appears from the reported cases.  In addition to the present case two others will be found in our reports, and in all of them the question at issue was as to the sufficiency of the ground of the application for the discharge of the defendant.  In *Dushane vs. Ryland*, 1 *Del. Ch.* 230, a discharge was granted because the defendant had leave to file a bill of review, but leave was given to renew the attachment in case the bill of

---

Note.

---

review should not be filed.   In *State vs. Marshall, post,* the defendant was discharged because of insanity.

The practice in such cases does not appear to have been doubted or drawn into controversy.

The practice upon the subject of attachment for breach of injunction, however, has been treated as not entirely settled in this State, and reference here to such cases as have occurred, may be of service to any one who may hereafter find it necessary to examine the subject.

### 1.  *How obtained or moved for.*

(1). In England, an order for attachment was obtained by motion upon notice that the defendants stand committed, 3 *Dan. Ch. Pr.* 1784, which notice must be served personally, *Ib. Elberton vs. Thirsk,* 1 *Jac. & W.* 376 ; *Anger-stein vs. Hunt,* 6 *Ves.* 488 ; in the latter case, it was held that a motion that he show cause why he should not be committed, was not good practice.   This case was in 1801, and in 1830, in *Durant vs. Moore,* 2 *Russ & M.,* 33, it was held that " an order that a defendant in contempt for breach of injunction shall " stand committed, unless cause be shown by a certain day, is not irregular if " it be personally served."   Hence, the text books cite the English practice as embracing both methods. 3 *Dan. Ch. Pr.* 1785 : 1 *Smith Ch. Pr.* 623.   Eden on Injunctions, which was published in 1821, says :   " The practice formerly " was, that upon affidavit of the service of injunction, and attachment issued " under the breach in it, if the defendant was arrested on the attachment and " entered his appearance with the Registrar, interrogatories were filed and " exhibited against him, to which he must answer upon oath,   If he denied " the service, the other party might examine witnesses to prove it ; if proved, " the Court committed him and made him pay the costs and charges before " he could be discharged."   This statement is quoted by Eden from *Har. Ch. Practice p.,* 552.   Eden then goes on to state that the modern practice is, where the party is in  contempt for breach of injunction, to give notice of the motion in it that the defendant should show cause why he should not be committed, and that he may stand committed for the breach of injunction, which is moved upon affidavit of service of the injunction. ( *Wat. Eden on Inj.* 103.)   Thus it appears that the early practice of issuing an attachment in the first instance upon affidavit of the service of the injunction, followed by the arrest of the defendant and his examination upon interrogatories, had been modified at the time Eden published his book, so far as to require notice personally served upon the defendant by a motion that he stand committed ; and that afterwards, in 1830, in *Durant vs. Moore,* the order was, that the defendant shall stand committed unless cause be shown by a certain day.   It is clear that under the English practice, a rule to show cause why attachment should not issue, is in fact proper, but that the order for committal is used in the first instance, and the only uncertainty is, whether the order is simply that the party " may stand committed" or " may stand committed on a certain day

---

Note.

---

" unless he show cause against it," the weight of authority being in favor of the former.

It is hardly to be doubted that the early English practice, and, therefore, that which would have been originally our own, as part of the common or unwritten law of England, was an immediate arrest without any notification, to enable the defendant to show cause against the proceedings prior to his being taken into custody.

(2.) The practice in the old Court of Chancery in New York is stated fully and in detail in 2*nd. Barb. Ch. Pr.* 273, (*B. V. Ch.* 8, *Sec.* 3 ) It embraces also, two methods : 1. Attachment in the first instance (p. 275,) awarded upon a foundation laid by affidavits or other *ex parte* evidence. This was returned forthwith, and at the return, the hearing was had. 2. By order to show cause *Ib. p.* 277 ; see as to practice, *In re Vanderbilt,* 4 *Johns Ch.* 57 ; *People vs. Rogers,* 2 *Paige,* 103.

(3.) In the United States Court, the practice seems to be a motion that the defendant stand committed for contempt and this after personal service of notice that the motion will be made and NOT a rule to show cause. *Worcester vs. Truman,* 1 *McLean* 483. It is to be observed that this case was decided without any reference to *Durant vs. Moore* and solely upon the authority of *Angerstein vs. Hunt* and the citation from Eden before referred to. See, also, *High on Inj. Sec.* 1454.

(4.) In Delaware, the practice seems to be settled in accordance with the first New York method as above stated. *i. e.,* on affidavit showing a breach, an attachment is awarded, at the return of which is a hearing, the first proceeding being an exhibition of interrogatories by the complainant and answer in writing under oath by the defendant. Four cases appear, in all of which the attachment was issued upon the affidavit filed. *The State vs. Gilpin et al,* 1 *Del. Ch.* 25 ; *Rice vs. Small,* 1 *Del. Ch.* 68 ; *St. vs. Eddy,* 2 *Ib.*269; *Becker vs. Missimer, unreported,* in Kent County.

In all of these cases, the practice adopted was as above stated. In the first two the matter was settled by compromise and went no further than filing interrogatories and answers. In the third case we find there was a sufficient admission by defendant of contempt and imprisonment for it. In the last case there was a hearing.

There were two cases subsequent to the period of these reports, in one of which, *State vs. Thompson,* CHANCELLOR SAULSBURY after an examination into the practice in England and, so far as any had been established, in this State, followed the rule as above stated and ordered the attachment in the first instance upon proof of service of the injunction and affidavits of a breach, and in the latter case of the *State vs. Lemon,* the same practice was pursued. Both of these are unreported.

---

Note.

---

It would seem that the Delaware practice, as stated, is correct in principle where the object is to punish for the *act* committed, not to enforce a decree to do some act.

The proceeding is a criminal one and this follows the analogy of the criminal law,—complaint,—arrest,—hearing.

The English practice, which has grown since the revolution, requiring notice of the motion, has not been followed in Delaware. The attachment is mere process to bring the party into the Court to answer, which must be done in every case before he can be convicted of contempt. *Jackson vs. Smith,* 5 *Johns.* 117.

(5.) In Maryland, the practice of the old Court of Chancery was as in Delaware, *Mudock's case,* 2 *Bland* 486.

### 2. *May it issue in vacation?*

It would seem that it must of necessity, otherwise the process of injunctions would be nugatory. It must be an inherent power of the Court and not dependent upon the Acts of Assembly regulating the chamber practice. If the injunction may be issued at Chambers, then *ex necessitate,* there must be power to enforce it. The Court of Chancery for such purposes is always open, *in re Vanderbilt* 4 *Johns. Ib.* 57, and even if the power to issue such process at Chambers, were not an inherent one, it would appear to be covered by the authority given in 13 *Delaware Laws* 153, and it certainly is within 17 *Del. Laws, Ch.* 215 *Sec.* 4. In *Cobb vs. Black,* 34 *Ga.* 162, it was held that an attachment by the Judge of the Circuit Court in Equity, was properly issued in vacation. In *State vs. Eddy,* the process was issued April 15, which was not at regular term-time and was just ten days after the service of injunction, and it may be fairly presumed to have been in vacation, although not so stated. In the *State vs. Thompson,* after discussion of this point, the process was issued in vacation. See *Green et al. vs. Hill,* 3 *Del. Ch.* 92, where an attachment for contempt was issued at Chambers.

### 3. *Method of proceeding.*

Upon the return of the process, when the defendant is brought before the Court, the first thing to be done is the examination of the defendant upon interrogatories filed by the complainant, which must be answered in writing under oath. This appears in the Delaware cases before cited. If the contempt is admitted, it must be punished, (*State vs. Eddy, Supra,*) if denied, it must be tried as a question of fact. *Maginnis vs. Parkhurst,* 3 *Gr. Ch.* (N. J.) 433; 2 *Barb. Ch. Pr.* 276; 1 *Eden on Inj.* 103; *Rice vs. Small,* 1 *Del. Ch.* 68. Plaintiff may examine witnesses to contradict the defendant's answers to the interrogatories; *Smith vs. Smith,* 14 *Abb.* (*Pr.*) 130, 468; *Maginnis vs. Parkhurst, supra,* In the last case, it was held that defendant's affidavits must be filed by leave of the Court, but plaintiff's were, of course. In the same case,

it is held that defendant's answer is conclusive. *Murdock's case,* 2 *Bland* 487 ; *U. S. vs. Dodge,* 2 *Gall* 312. In the *State vs. Thompson, unreported,* at the hearing, Chancellor Saulsbury heard witnesses orally on both sides. Affidavits may be used supplementary to those upon which the process was issued. *St. Amant vs. De Beixcedon,* 3 *Sandf.* 703.

4. *What the affidavit must show.*

(*a*) Service of injunction; *State vs. Gilpin,* 1 *Del. Ch.* 25.

If the service is denied, proof of knowledge that the injunction was issued is equivalent; 3 *Dan. Ch. Pr.* 1783.

(*b*) The fact constituting breach of the injunction.

5. *Punishment.*

If the defendant be convicted, he will be punished by a fine to reimburse the damage done by the breach and for the costs ; *Lansing vs. Easton,* 7 *Paige* 364 ; *Rogers vs. Paterson,* 4 *Ib.* 454 ; or by imprisonment ; *State vs. Eddy, supra.* In the unreported case above cited, *State vs. Thompson,* the Chancellor being satisfied from the evidence, that the breach was not wilful, simply imposed upon the defendant the payment of the costs and committed him to the custody of the Sheriff until the costs were paid, with warning against any further breach.