## Julia L. Schoenthaler v. Isaac Rosskam et al.

1. CHANCERY PRACTICE—*When Finding of Master Will Not Be Disturbed.*—The finding of the master will not be disturbed unless the weight of the evidence is clearly and manifestly against it.

2. PRACTICE—*Presumption in Favor of Decree in the Absence of a Complete Record.*—In the absence of a complete record, the decree of the Circuit Court will be supported by every reasonable intendment and presumption.

3. CREDITOR'S BILL—*Upon What Property Creditor Acquires a Lien by Filing Bill.*—By filing a judgment creditor's bill, the creditor acquires a specific lien on the property which the debtor had at the commencement of the suit, entitling him to a priority of payment out of that property; but a supplemental bill is necessary to obtain a lien upon after-acquired property of the debtor.

4. BANKRUPTCY—*When Lien of a Creditor's Bill is Not Affected Thereby.*—A lien of a creditor's bill, filed more than four months before the filing of a petition in bankruptcy, is not thereby affected.

5. SAME—*Title Remains in Bankrupt Until the Appointment of a Trustee.*—The title of the bankrupt is not divested by an adjudication in bankruptcy, but remains in him until the appointment of a trustee.

6. SAME—*Court Will Not Presume the Appointment of a Trustee.*—A court will not presume the appointment of a trustee in order to set aside a decree and to defeat the claim acquired by the creditor's bill.

7. SAME—*Partnership Obligations Not Discharged by Discharge of One Partner Individually.*—Bankruptcy proceedings instituted in behalf of one partner not in accordance with the provisions of the bankruptcy act of 1898, where a partnership is concerned, do not affect the lien of partnership creditors under their creditor's bill.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed April 14, 1903.

**Statement.**—October 16, 1897, appellees filed a creditor's bill against the principal defendants, F. C. Schoenthaler and William A. Stiles, based upon a judgment recovered

against said defendants as copartners in the sum of
$1,154.77, upon which was an issuance and return of an
execution *nulla bona.* October 18, 1897, a receiver for the
property of the principal defendants was appointed.

December 17, 1897, appellees filed by leave of court an
amendment to their bill of complaint, making Julia L.
Schoenthaler, wife of said F. C. Schoenthaler, a party
defendant and alleging that she acquired title to certain
real estate known as 1350 Bryn Mawr avenue, Chicago,
the title to which came to her by warranty deed, October
25, 1894; further alleging that F. C. Schoenthaler had vol-
untarily and without any consideration moving to him
from his wife, paid with his own personal funds, interest,
taxes and insurance for the said property in a sum exceed-
ing $1,000, and thereby acquired an equitable claim against
the said wife, for which she is now indebted to him, and
praying that said Julia be decreed to pay amount so due
to the receiver.

February 16, 1898, she was served with process and
April 9, 1898, filed her answer, wherein she admitted that
her husband had paid interest, taxes and insurance as
alleged, but denied that such payments were made without
consideration and alleged that on the 10th day of August,
1896, she loaned to her said husband the sum of $2,000, out of
which he was to repay himself such sums of money as he
had advanced for such taxes, interest, insurance, etc., and
out of which he was to pay future taxes, interest and insur-
ance against said property until August 10, 1899, and three
years from the above-mentioned date he was to return to
his wife such sum as still remained in his hands, with
interest thereon at six per cent per annum from August 10,
1896.

Issue was joined in the cause on the original bill as
amended and the case referred to a master in chancery to
take proofs and report the same with his opinion to the
court.

February 2, 1900, appellees filed an amended and supple-
mental bill, and, among other things, alleged by way of

supplement that subsequent to the said filing of the amended bill, F. C. Schoenthaler had applied in payment of interest, taxes and insurance for said property a large sum of money voluntarily and without any consideration passing to him from his said wife, and had thereby acquired an equitable claim against his said wife, and prayed that said indebtedness should be ascertained and decreed to be paid by her to said receiver.

February 20, 1900, Schoenthaler and wife filed their separate answers to the amended bill, wherein it is alleged that all money paid by F. C. Schoenthaler to his wife was paid on account of an indebtedness due from him to her, as evidenced by his note to her; and also the answers alleged his discharge in bankruptcy on the 26th day of June, 1899, upon a petition filed by him individually, and that thereby the judgment of appellees was discharged. The master by his report, which was approved, found that the existence of an indebtedness from F. C. Schoenthaler to his wife was not established and that the note to her was not given by him at the time it bears date; that even if anything was advanced by her to him it was not intended by them as a loan and that it was not understood by them that the said payments for interest, insurance and taxes were made by him in payment of the alleged indebtedness to his wife and that as to all payments made by him subsequent to the filing of the amended bill of complaint, they must be regarded as having been made for her use and benefit, for the reason that the said bill of complaint had become *lis pendens*, and that the rights of appellees were superior to her rights; and that she became and is liable to appellees or the receiver appointed in this cause in the amount of the said judgment, with legal interest, because of the payments made by her husband. A decree was entered substantially following the report of the master, but making the additional finding that even if said sum of $2,000 was paid by Mrs. Schoenthaler to her husband in the month of August, 1896, part of said sum was so paid to repay him such sums of money as he had advanced prior thereto, for the payment

of said taxes, interest and insurance; that sums so advanced by him prior to said tenth day of August, 1896, and which was so repaid, as aforesaid, amounted to at least the sum of $1,625.15.

It was ordered by said decree that appellees recover from said Julia L. Schoenthaler the sum of $1,427.91, the amount of appellees' judgment, with interest and costs.

M. M. JACOBS, attorney for appellant.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

This is a creditor's bill to subject the alleged interest or claim of Frank A. Schoenthaler in certain real estate, the title to which is held by his wife, to the payment of appellees' judgment. It is claimed by appellant that her husband was indebted to her and that the payments for taxes, insurance and interest were made at her request and credited on his indebtedness to her. The master has found and the court has decreed otherwise.

It is always most productive of satisfactory results closely to scrutinize the transactions between an insolvent husband and his wife. The character of a transaction similar to the one in this case is determined not only by weighing the testimony, but by considering all the circumstances surrounding the parties. The wife here claims that on August 10, 1896, she borrowed $2,000, and to secure the payment of this loan gave a mortgage on her property. It is to be remarked that the money coming from this loan was represented by two checks, both payable to the order of her husband; and that she loaned this money to him, for which he gave her a note, dated, not the day upon which he received the money, but dated August 10, 1896, and that her husband himself indorsed the alleged payments thereon.

Appellant insists that these statements were testified to by appellant and her husband as witnesses for appellees, and that appellees are thereby bound. When it is remembered that appellant and her husband are interested parties,

experience suggests that a court should compare their tes-
timony with their conduct and all the other evidence in the
case and accept that portion of their evidence which is
credible and reject that which is contrary to reason.  These
parties were examined before the master at different times.
When first on the stand it is almost incredible that in
answer to certain questions then propounded they would
not have disclosed the particulars of the alleged loan, if such
particulars actually existed.  Many months thereafter, and
when the exigency of the case seemed to require, the matter
of the alleged loan was for the first time stated.

Appellant testified that the indorsements on her hus-
band's note were made by her, but later it appeared she
was mistaken.  Her husband assumed to know very little
or nothing as to whether the note to his wife was for $2,000
or $2,500, or what was the amount of the loan from the
association.

It is significant that her husband in preparing the list of
his debts due to creditors in his bankruptcy proceedings
would not have mentioned this alleged indebtedness due
from him to his wife.  It is true the significance of the
present suit was not then anticipated.  His failure to sched-
ule this alleged indebtedness would not cut off any rights
of his wife, but owing to the fact that his financial trans-
actions were extremely limited in number and amount, and
that he and his wife were living together on friendly terms
and he attending to her business, the omission to schedule
the debt is remarkable.

The inherent probability or improbability of the state-
ment of the appellant as to the manner in which she was
to be repaid the $2,000 which she claims to have loaned her
husband, were matters of evidence from which variant con-
clusions by different minds might have been drawn.  The
fact that she was paid no interest by her husband would
tend to raise the presumption that the alleged loan to her
husband was fraudulent.  It frequently occurs that the cir-
cumstances attending the transactions of parties speak a
more direct language and are more persuasive than is the

testimony of witnesses. The evidence and the attendant circumstances we can not delay to recount, but they were all evidently with great care and with the assistance of able counsel patiently considered by an experienced master in chancery. The findings of the master so far as they affect appellant have been approved by the chancellor, who in support of the decree made the additional finding set forth in said decree; so that under either theory, if appellees' case is sustained by the evidence, it is sufficient.

We have carefully examined the record in this case and can not say that its weight is clearly and manifestly against the finding, and therefore we shall refuse to disturb the same. Siegel v. Andrews & Co., 181 Ill. 350; Beatty v. Somerville, 102 Ill. App. 487.

Appellees suggest that this court should not consider the case upon its merits, because the record does not show that the objections filed before the court were ruled upon by the master. We would be inclined to attach much force to this suggestion, except for the fact that the court, without objection on the part of the appellees, ordered the objections made before the master to be filed and considered as exceptions to the master's report, and afterward overruled the same.

We have considered the point made by appellees, that "there can be no review of the facts, because the material exhibits offered at the hearing are not in the record."

If material exhibits have been omitted from this record, we are precluded from reviewing the facts.

" Upon well established principles it must be held that in the absence of a complete record the decree of the Circuit Court will be supported by every reasonable intendment and presumption." Culver v. Schroth, 153 Ill. 437.

In the case at bar the clerk has certified that the transcript of record filed is a " true, perfect and complete copy of transcript of record," etc., but appellees claim that notwithstanding this certificate, an inspection of the record will disclose the fact that the record is materially incomplete; that it appears from the record that appellees'

counsel offered in evidence four tax receipts which were admitted, but which are omitted from this record, and that appellees' counsel offered in evidence ten interest notes or coupons and also the bond and mortgage given to secure the alleged $2,000 loan.

The examination of these exhibits as evidence may have assisted the court in determining the very material inquiry by whom this loan was made and the circumstances surrounding the transaction, so that if the evidence, apart from these exhibits, were insufficient to sustain the decree, we would be unable to say that with the exhibits the court was not justified in entering the decree.

If the face of the record contradicts the certificate, we are not disposed blindly to follow the certificate and ignore the plain facts of the record. This court, as a court of review, can only review the case made before the court below, and brought before us by the record. Dean v. Ford, 180 Ill. 310. But the record filed must purport to be a true, perfect and complete transcript of the record.

It is not even necessary that the certificate state that the record is true, perfect and complete, provided an inspection of the record reveals the fact that it must be true, perfect and complete. Upon an inspection of the original record it is evident that the certificates and tax receipts were admitted in evidence, but omitted from the record; however we prefer to decide this case upon its merits, and therefore shall hold the record sufficient for such purpose.

It would seem upon the theories advanced by the pleadings and the evidence, or by one of them, that in any event, whether her husband was given the money either to reimburse him for moneys paid out prior to August 10, 1896, or to be paid out by him thereafter, appellant became liable to her husband in a sum equal to the judgment and directly invested in her property, in which amount she should be held liable to appellees, his judgment creditors. We shall not further consider these theories inasmuch as appellant has declined to discuss them.

Apart from the questions herein before considered, it is

insisted by appellant that no lien was acquired by appellees by virtue of the original or amended bill of complaint upon any property which her husband acquired, or on any payments made by him subsequent to the filing of the amended bill, and to sustain this contention reference is made to First National Bank v. Gage, 93 Ill. 172. It is held in that case that the lien which the creditor acquires by filing a judgment creditor's bill is only upon the property which the debtor had at the commencement of the suit. In that case the court states:

"In Eager v. Price, 2 Paige, 333, Chancellor Walworth held that by filing a judgment creditor's bill, the creditor acquired a specific lien on the property which the debtor had at the commencement of the suit, entitling him to a priority of payment out of that property, but that a supplemental bill was necessary to obtain a lien upon after-acquired property of the debtor."

In that case it is said:

"As to chattels, liable to execution at law, the lien is liable to be defeated by the actual seizure of the chattels on an execution in favor of another creditor before the appointment of a receiver. Davenport v. Kelly, 42 N. Y. 193; Lansing v. Easton, 7 Paige, 364; Storm v. Waddell, 2 Sanford, Ch. Rep. 494."

In the light of these authorities, we are of the opinion that after-acquired property of the principal defendant to a creditor's bill can only be reached by the filing of a supplemental bill.

The original bill in this case was filed October 16, 1897; the amended bill December 17, 1897, and an amended and supplemental bill February 2, 1900. Appellees claim many of the payments sought to be reached by this proceeding were made prior to the date of filing the original bill, October 16, 1897; a few thereof between October 16, 1897, and December 17, 1897, the date of filing the amended bill; and other payments were made subsequent to December 17, 1897, and prior to the filing of the supplemental bill. Appellees state that they filed their supplemental bill to reach not only the payments made prior to the filing of the

amended bill, but also those made after the amended bill was filed. Without the filing of the amended bill, it must be conceded that appellees would have no lien upon any payments made subsequent to the filing of the original bill. It is true that in the case at bar a receiver was appointed; but not so in the Gage case. Still, we apprehend the appointment of a receiver does nothing more than place the property to which the lien attaches by virtue of filing the creditor's bill beyond the reach of an execution at law.

There would be no serious difficulty in determining that the amended and supplemental bill created a lien upon all payments made, were it not for the fact that the debtor, appellant's husband, filed his petition in bankruptcy, February 16, 1899, and was discharged on the 26th day of June, 1899. The contention is that inasmuch as the supplemental bill, by which all payments made subsequent to the filing of the original bill were sought to be reached, was filed long after the discharge of the debtor under the bankruptcy act, and that therefore no payments made subsequent to the filing of the original bill were reached by this proceeding. It is even further claimed that if a lien upon the payments made prior to the filing of the original bill was acquired by such filing, still that such lien was released by the discharge of the debtor and that therefore this decree should be reversed. With this latter contention, we are not in accord. It is fairly to be inferred from a study of the act of bankruptcy that a lien of a creditor's bill, filed more than four months before the filing of the petition in bankruptcy, is not thereby affected. The original bill, creating a lien upon all payments made prior to its filing, had been pending for more than a year prior to the first step in the bankruptcy proceedings and it is our opinion that the creditor's bill or any lien created by it were not affected in any way by the bankruptcy proceedings. We have examined the case of Botts v. Patton, 49 Ky. (10 B. Mon.) 452, but find that case variant from the one at bar, for the reason that the creditors could not subject the estate of a discharged bankrupt to the payment of debts.

The suit was begun after the discharge was obtained. In the case at bar, the doctrine of *lis pendens* is applicable.

It is strenuously urged by appellees that inasmuch as the record does not affirmatively show that a trustee in bankruptcy for appellant's husband was appointed, that therefore the title of appellees was unaffected by the proceedings in bankruptcy. The point is well taken, if no trustee of the estate of the bankrupt was appointed. Sec. 70a, Bankruptcy Act; Hampton v. Rouse, 22 Wallace, 263. The court in Robinson v. Hall, 8 Ben. 61, held that the title of the bankrupt is not divested by an adjudication in bankruptcy, but remains in him until the appointment of an assignee. If a trustee was appointed, then he acquired title to all the estate of the bankrupt subject to the limitations hereinbefore stated.

But the appellant replies that we should presume the appointment of a trustee, because the act of bankruptcy provides for his appointment. We do not understand that an adjudication in bankruptcy must necessarily be succeeded by the appointment of a trustee. If so, it does not follow, because the act provides for the election or appointment of a trustee, that therefore such appointment was made.

While with the view we take of the facts it is not necessary to decide the point now being considered, we are, however, of the opinion that the court ought not to presume the appointment of a trustee in order to set aside a decree and to defeat the claim acquired by the amended and supplemental bills.

It must be remembered that the bankruptcy proceedings involved in this case were instituted in behalf of one of two joint debtors. The record does not show that the partnership itself or the other member of the firm was made a party to the proceeding, or that a statement of partnership assets was made; nor was an allegation of a previous settlement of partnership affairs made. The bankruptcy act of 1898 provides the course to be pursued where a partnership is concerned and further provides that the creditors of the partnership shall elect the trustee, and how juris-

diction over unwilling partners is to be obtained.    In the case at bar, only an individual petition was filed.

Bearing in mind the law of this state that partnership obligations are joint, and the detailed steps prescribed in the bankruptcy act for a partnership, we are of the opinion that the proceedings in bankruptcy shown in the record did not affect the rights or liens of appellees under their amended and supplemental bill, and in no view of the case the rights and lien of appellee acquired by the filing of their original bill.

The industry of counsel on either side of this case has brought together cases apparently in conflict as to a partner's right to discharge upon his individual petition, but after devoting the time at our command, we are clearly of the opinion that the proceedings in bankruptcy were not of such a nature as to affect appellees' lien acquired under the amended and supplemental bill, or in any event under the original bill.

We find that the court did not err in refusing the motion of appellant for leave to amend her answer.   Though many reasons may be urged why the decree in this case should be sustained, we are satisfied that the debtor had invested in the real estate in question, in the payment of taxes, interest and insurance, an amount of money far in excess of the judgment prior to the filing of the original bill; and we find under the evidence that such payments were not made or credited in good faith upon any loan from appellant to her husband.

After considering the entire record and the authorities cited, we are of the opinion that the decree of the Circuit Court should be affirmed.